UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

               v.

**REPORT**
**and**
**RECOMMENDATION**

**04-CR-189A(F)**

RICHARD MULLEN, a/k/a Carlos Watts,
FREDERICK NOLLEY,
EFRIM K. RICHARDSON, a/k/a Efram Richardson,
a/k/a Kevin Richardson,
MICHAEL STRANC,
ANDRE HALL, a/k/a Dre
DURRIAN PRESSLEY, a/k/a Devo,
YOLANDA WINDLEY,
LAWANDA D. EDMOND,
JOSEPH HARGRAVE,
EDWARD HEARST,
KEVIN WEEKS,
LARRY SANGER,
MAURE GRAHAM,
WILLIE MORRISON,
ROBERT ADAMS,
JOSEPH WILKIE,
JUSTIN PALMER,
DEBBIE DRAKE,
TERRANCE ASKEW,
AMEER MCKNIGHT,
DOUGLAS MCPEEK, a/k/a Jay McPeek
KWAINE DAVIS,
MARVIN WEST,
ROSS COOPER,
JEROME DAVIS,
AYANNA NOLLEY,
TERRY MULLEN,
CHRISTINA TURNER,
ROBIN GILMORE,
TIFFIANI JACKSON,
RAMONA WATSON,
HOWARD DEGREE,
KENYA LEE,
ERIC AMIDON
RONNIE FUNDERBURK,

                   Defendants.

APPEARANCES:                KATHLEEN M. MEHLTRETTER
ACTING UNITED STATES ATTORNEY
Attorney for the Government
MARY C. KANE, of Counsel
Federal Centre
138 Delaware Avenue
Buffalo, New York    14202

LEIGH E. ANDERSON, ESQ.
Attorney for Defendant Richard Mullen
69 Delaware Avenue
Suite 1001
Buffalo, New York   14202

LAW OFFICE OF DAVID J. SEEGER
Attorneys for Defendant Richard Mullen
DAVID J. SEEGER, of Counsel
69 Delaware Avenue
Suite 1100
Buffalo, NEW YORK   14202

JOSEPH J. TERRANOVA, ESQ.
Attorney for Defendant Frederick Nolley
7350 Boston State Road
Hamburg, New York   14075

LOREN D. LOBBAN
Attorney for Defendant Efrim K. Richardson
The Bullard Lobban Law Group
69 Delaware Avenue
Suite 1104
Buffalo, New York   14202

SEAN DENNIS HILL, ESQ.
Attorney for Defendant Michael Stranc
Six North Pearl Street
Buffalo, New York   14202

COHEN & LOMBARDO, P.C.
Attorneys for Defendant Andre Hall
ROBERT N. CONVISSAR, of Counsel
343 Elmwood Avenue
PO Box 5204
Buffalo, New York    14213-5204

TERRY GRANGER, ESQ.
Attorney for Defendant Durrian Pressley
110 Pearl Street, Suite 200
Buffalo, New York    14202

MATTHEW P. PYNN, ESQ.
Attorney for Defendant Yolanda Windley
272 East Avenue
Lockport, New York   14094

JOSEPH MISTRETT
FEDERAL PUBLIC DEFENDER
Attorney for Defendant Lawanda D. Edmond
JOHN F. HUMANN, Assistant Federal Public Defender
300 Pearl Street, Suite 450
Buffalo, New York   14202

MARTIN L. SCHMUKLER, ESQ.
Attorney for Defendant Joseph Hargrave
41 Madison Avenue, Suite 5B
New York, New York    10010

ANNE E. ADAMS, ESQ.
Attorney for Defendant Edward Hearst
43 Court Street, Suite 700
Buffalo, New York   14202

ROBERT M. GOLDSTEIN, ESQ.
Attorney for Defendant Kevin Weeks
438 Main Street, Suite 225
Buffalo, New York    14202

NELSON S. TORRE, ESQ.
Attorney for Defendant Larry Sanger
1220 Liberty Building
424 Main Street
Buffalo, New York   14202

HORACE A. HUTSON, ESQ.
Attorney for Defendant Maure Graham
295 Main Street, Suite 468
Buffalo, New York    14203

JOHN K. JORDAN, ESQ.
Attorney for Defendant Willie Morrison
1580 Statler Towers
107 Delaware Avenue
Buffalo, New York 14202

JOSEPH M. LaTONA, ESQ.
Attorney for Defendant Robert Adams
716 Brisbane Building
Buffalo, New York    14203

ANGELO MUSITANO, ESQ.
Attorney for Defendant Joseph Wilkie
1520 Pine Avenue
P.O. Box 2127 NMS
Niagara Falls, New York    14301

LAW OFFICE OF J. GLENN DAVIS
Attorney for Defendant Justin Palmer
J. GLENN DAVIS, of Counsel
69 Delaware Avenue, Suite 1104
Buffalo, New York    14202

JUDITH M. KUBINIEC, ESQ.
Attorney for Defendant Debbie Drake
402 Amherst St.
Buffalo, New York   14207

CRAIG DEXTER HANNAH, ESQ.
Attorney for Defendant Terrance Askew
69 Delaware Avenue, Suite 711
Buffalo, New York   14202

ALAN S. HOFFMAN, ESQ.
Attorney for Defendant Ameer McKnight
460 Franklin Street
Buffalo, New York    14202

LABIN & BUFFOMANTE
Attorney for Defendant Douglas McPeek
RICHARD R. SHAW, II, of Counsel
531 Farber Lakes Dr.
Williamsville, New York    14221

HERBERT R. JOHNSTON, JR., ESQ.
Attorney for Defendant Kwaine Davis
118 Admiral Road
Buffalo, New York    14216

JOHN W. DORN, ESQ.
Attorney for Defendant Marvin West
One Town Centre, Suite 300
501 John James Audubon Parkway
Amherst, New York 14228

LAWRENCE J. DESIDERIO, ESQ.
Attorney for Defendant Ross Cooper
69 Delaware Avenue, Room 1000
Buffalo, New York   14202-3801

LoTEMPIO & BROWN
Attorneys for Defendant Jerome Davis
FRANK L. LoTEMPIO, JR., of Counsel
181 Franklin Street
Buffalo, New York    14202

ROSENTHAL, SIEGEL, MUENKEL & MALONEY, LLP
Attorneys for Defendant Ayanna Nolley
CHERYL MEYERS-BUTH, of Counsel
300 Main Street
Buffalo, New York     14202

LEE CHARLES LaMENDOLA, ESQ.
Attorney for Terry Mullen
70 Niagara Street, Suite 500
Buffalo, New York    14202

BURGETT & ROBBINS
Attorneys for Defendant Christina Turner
ROBERT A. LIEBERS, of Counsel
15 E. Fifth Street
PO Box 3090
Jamestown, New York    14702-3090

DAVID GERALD JAY, ESQ.
Attorney for Defendant Robin Gilmore
69 Delaware Avenue, Suite 1103
Buffalo, New York    14202

ALLAN P. McCARTY, ESQ.
Attorney for Defendant Tiffiani Jackson
7350 Boston State Road
Hamburg, New York    14075

KEVIN P. SHELBY, ESQ.
Attorney for Defendant Ramona Watson
5662 Main Street
Williamsville, New York    14221

JOHN J. MOLLOY, ESQ.
Attorney for Defendant Howard Degree
4268 Seneca Street
West Seneca, New York   14224

MICHAEL J. STACHOWSKI, ESQ.
Attorney for Defendant Kenya Lee
2025 Clinton St.
Buffalo, New York    14206

ANDREW C. LoTEMPIO, ESQ.
Attorney for Defendant Eric Amidon
1580 Statler Towers
Buffalo, New York    14202

LIPSITZ, GREEN, FAHRINGER, ROLL,
      SALISBURY & CAMBRIA,
Attorneys for Defendant Ronnie Funderburk
PAUL J. CAMBRIA, JR., of Counsel
42 Delaware Avenue, Suite 300
Buffalo, New York    14202

**JURISDICTION**

This case was referred to the undersigned by the Hon. Richard J. Arcara on

October 19, 2005 for all pretrial matters.  The matter is presently before the court for a

report and recommendation on Defendants' motions seeking suppression of evidence

and as to Defendants Pressley, Edmond and Hargrave, seeking dismissal of the

Second Superseding Indictment (Doc. Nos. 130, 132, 137-141, 142-146, 150-152, 154,

172, 182 and 189).

## BACKGROUND

Defendant Richard Mullen and six others, including co-defendants Frederick

Nolley, Richardson, Edmond, Stranc, Pressley and Hall, were initially indicted in a five

count indictment on July 29, 2004, charging violations of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), 843(b), 846, 848(a), and 18 U.S.C. § 2.  (Docket Item No. 1).  Specifically,

Defendant Richard Mullen is alone charged in Count 1 of the Indictment with knowingly,

willfully, intentionally and unlawfully engaging in a continuing criminal enterprise of

which he allegedly organized, supervised, and managed, and from which he allegedly

obtained substantial income and resources, in violation of 21 U.S.C. § 848 ("Count 1" or

"the CCE Count").  Defendants Richard Mullen, Frederick Nolley, Richardson, Stranc,

Hall, Pressley and Edmond were charged with conspiracy to possess with intent to

distribute, and to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. §

846 ("Count 2" or "the Conspiracy Count"); Defendants Richard Mullen, Frederick

Nolley and Edmond were charged with knowingly, intentionally and unlawfully

possessing with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. §

841 ("Count 3"); and Defendants Richard Mullen, Frederick Nolley, Stranc and Edmond

were charged with knowingly, intentionally and unlawfully possessing with intent to

distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841 ("Count 4").

Additionally, Defendant Hall was charged in Count 5 of the Indictment with knowingly,

intentionally, and unlawfully possessing with intent to distribute and distribute five grams

or more of cocaine in violation of 21 U.S.C. § 841 ("Count 5").

In a Superseding Indictment, filed January 20, 2005, Defendants Windley,

Hargrave, Hearst, Weeks, Sanger, Graham, Morrison, Adams, Wilkie, Palmer, Drake, Askew, McKnight, Douglas McPeek, K. Davis, West, Cooper, J. Davis, Ayanna Nolley, Terry Mullen, Turner, Gilmore, Jackson, Watson, Degree, Lee, and Amidon were added as defendants under the Conspiracy Count.  (Docket Item No. 52).[1]  A Second Superseding Indictment ("the Indictment"), filed on April 28, 2005, added Defendant Funderburk to the Conspiracy Count.  (Docket Item No. 116).

By order dated February 4, 2005, June 1, 2005 was established as the deadline for filing all pretrial motions, both dispositive and non-dispositive.  (Docket Item No. 81) ("the Scheduling Order").  In accordance with the Scheduling Order, the following motions were filed:  Richard Mullen on June 1, 2005 (Docket Item No. 150) ("Eoannou Affirmation"), Frederick Nolley on July 1, 2005 (Docket Item No. 172) ("Terranova Affirmation"), Efrim Richardson on June 1, 2005 (Docket Item No. 145) ("Lobban Affidavit"), Durrian Pressley on June 1, 2005 (Docket Item No. 140) ("Pressley's Motion"), LaWanda Edmond on June 2, 2005 (Docket Item No. 154) ("Humann Affirmation"), Joseph Hargrave on June 2, 2005 (Docket Item No. 152) ("Schmukler Affirmation"), Larry Sanger on May 27, 2005 (Docket Item No. 130) ("Torre Affidavit"), Robert Adams on June 1, 2005 (Docket Item No. 142) ("LaTona Affidavit"), Justin Palmer on May 30, 2005 (Docket Item No. 132) ("Palmer Motion"), Debbie Drake  on June 1, 2005 (Docket Item No. 151) ("Drake Motion"), Ross Cooper on June 1, 2005 (Docket Item No. 143) ("Desiderio Affirmation"), Ayanna Nolley on June 1, 2005 (Docket Item No. 138) ("Meyers-Buth Affidavit"), Ameer McKnight on May 31, 2005 (Docket Item

---

[1]   These Defendants, along with six others, were originally charged by complaint filed August 2, 2004 with violations of 21 U.S.C. §§ 842(a)(1), 843(b), 846.  (Doc. No. 1).

No. 137) ("Hoffman Affidavit") and on June 1, 2005 (Docket Item No. 141) ("Hoffman

Supplemental Affidavit"), Terry Mullen on June 30, 2005 (Docket Item No. 182)

("LaMendola Affidavit"), Kenya Lee on June 1, 2005 (Docket Item No. 139)

("Stachowski Affirmation"), Michael Stranc on June 1, 2005 (Docket Item No. 144)

("Stranc Motion"), and Ronnie Funderburk on July 15, 2005 (Docket Item No. 189)

("Funderburk's Motion") ("Moving Defendants"). [2, 3, 4, 5, 6]   The Government was directed

to file its response to such motions by August 31, 2005.

On August 30, 2005, the court granted the Government's request for an

extension to file its response to Defendants' motions not later than September 2, 2005.

(Docket Item No. 216).  On September 2, 2005, the Government filed the Government's

Response to Omnibus Motion in response to Defendants' motions. (Docket Item No.

---

[2] Defendant Stranc entered a guilty plea on December 16, 2005. (Docket Item No. 285).

[3] Included in these motions are requests for certain non-dispositive relief which are addressed in a Decision and Order filed contemporaneously with this Report and Recommendation.

[4] Although Defendants' motions request a variety of relief, most of Defendants' requests are generalized and only some Defendants provide substantive arguments in support of certain requests. Additionally, Defendants Richard Mullen, Adams, Frederick Nolley, Terry Mullen, Edmond, Hargrave, Pressley, Cooper, Lee, Palmer, Richardson, McKnight and Funderburk request to join in motions made by their co-Defendants.  Defendants Ayanna Nolley and McKnight make particular requests to join in their co-Defendants' motions regarding objections filed to the electronic surveillance conducted by law enforcement.  Accordingly, the court considers these Defendants as having requested the same relief insofar as each Defendant has standing to make such a request and the relief requested is sought by other Defendants.  To facilitate the court's consideration, references to motion papers filed by specific Defendants will be made only with regard to Defendants who provided substantive arguments in support of their respective requests.

[5] Defendants Andre Hall, Edward Hearst, Kevin Weeks, Maure Graham, Joseph Wilkie, Terrance Askew, Douglas McPeek, Kwaine Davis, Jerome Davis, Christina Turner, Tiffiani Jackson, Ramona Watson, Howard Degree and Eric Amidon filed no pretrial motions.

[6] Defendants Askew, West, Gilmore, Windley and Cooper were dismissed from the case on November 7, 2005, July 14, 2005, August 30, 2005, May 19, 2005 and January 24, 2006, respectively. Accordingly, the court considers all pretrial motions filed by Defendant Cooper to be withdrawn. Defendant Morrison, who had been a fugitive, was arraigned on January 10, 2006.

223) ("Government's Response").  As noted, oral argument was conducted on October

11, 2005. [7]  On February 13, 2006, in response to the court's request for clarification of

the Government's Response, the Government filed a Supplemental Response to

Government's Response to Defendant's Omnibus Motions.  (Doc. No. 328)

("Government's Supplemental Response").

     Defendants' motions include requests for suppression of Title III evidence,

suppression of evidence obtained pursuant to various search warrants issued on

August 2 and 3, 2004, suppression of evidence seized pursuant to a vehicle stop in

Kansas and subsequent warrantless search of several Defendants in March 2003,

suppression of post-arrest statements made by Defendants Funderburk and Palmer, a

hearing pursuant to *Franks v. Delaware*, and dismissal of Count 2 of the Indictment.

Based on the following, Defendants' motions should be DENIED in part, and

DISMISSED as moot in part.


# FACTS [8]

     The charges in the Indictment arise from an investigation conducted by the Drug

Enforcement Agency ("DEA") of an alleged cocaine possession and distribution

conspiracy.  Defendants Richard Mullen, Frederick Nolley, Richardson, Edmond,

Stranc, Pressley, Hall, Hargrave, Hearst, Weeks, Sanger, Graham, Adams, Wilkie,

Palmer, Drake, Askew, McKnight, McPeek, K. Davis, Cooper, J. Davis, Ayanna Nolley,

---

[7] Defendant Richard Mullen's motion to dismiss, filed on November 23, 2005 (Docket Item No. 273), is addressed in a separate Report and Recommendation.

[8] Taken from the pleadings and papers filed in this action.

Terry Mullen, Turner, Jackson, Watson, Degree, Lee, and Funderburk are alleged co-conspirators in a drug trafficking conspiracy operating in and around Buffalo, New York. According to the Government, Defendant Richard Mullen is the alleged leader of the drug conspiracy.  Defendant Frederick Nolley allegedly distributed the cocaine and collected the drug purchase money.  Defendant Richardson was an alleged customer of Richard Mullen's who would convert the cocaine to cocaine base and sell it to his own customers, including Defendants Amidon, McPeek and Wilkie, and others.  The Indictment also alleges that Defendant Funderburk, a Buffalo police officer, advised Defendant Frederick Nolley, his brother-in-law, on how to operate a vehicle without attracting police attention, and that Funderburk staged a bogus car stop of Nolley's vehicle to make it appear the police confiscated money from Nolley's vehicle, which the Government asserts was given to Nolley by a drug customer.

In March 2004, DEA agents learned from Defendant Frederick Nolley, then acting as a cooperating witness, that, according to Richard Mullen, in January 2003 one of Mullen's drug couriers, Wesley Alleyene, who was then transporting kilogram quantities of cocaine for Mullen from Los Angeles to Buffalo, was stopped in Nebraska in a vehicle from which 10 kilograms of cocaine was seized.  Subsequently, in March 2003, following a traffic stop, police in Kansas seized, from a vehicle rented by Defendant Edmond and driven by Defendant Stranc who was arrested, three kilograms of cocaine, which Mullen had obtained in Los Angeles.  Defendants Richard Mullen, Nolley and Edmond were also stopped while driving through Kansas at the same time in a separate vehicle when Stranc's vehicle was stopped, but although Edmond admitted renting the vehicle Stranc was driving, they denied any knowledge of the

cocaine.  Following these stops, the DEA began conducting surveillance, including

electronic surveillance, of Defendants Richard Mullen, Frederick Nolley and

Richardson.  Prior to applying for eavesdropping warrants, pen registers were installed

on Richardson's cellular telephones.  The DEA monitored some calls to Richardson

with an informant's consent.  Thereafter, the DEA applied for eavesdropping warrants

for Richard Mullen, Frederick Nolley and Richardson.

In connection with the investigation, District Judges William M. Skretny and John

T. Elfvin issued seven intercept orders pursuant to Title III, 18 U.S.C. § 2510, *et seq.*,

from which the Government obtained relevant evidence leading to the Indictment and

for use at trial.  These intercept orders relate to conversations between Richardson,

Frederick Nolley, Richard Mullen and others, transmitted by telephone, cellular phone,

or pager**,** and bear the targeted telephone numbers 716-570-2102, 716-578-2781

(target name: Efrim Richardson); 716-369-0057 (target name: Frederick Nolley - Order

I); 716-602-0413 (target name: Frederick Nolley - Order II); 716-578-2614 (target name:

Richard Mullen - Order I); 716-818-2697 (target name: Frederick Nolley - Order III);

716-400-7307 (target name: Richard Mullen - Order II); 716-308-0672 (target name:

Richard Mullen - Order III) ("the Intercept Orders").  Government's Response at 6. [9, 10]

---

[9] Defendant Funderburk cites four additional orders directed to other telephones issued by District
Judge Richard J. Arcara and Judge Skretny to allow eavesdropping in this case which Funderburk
contends are relevant.  These telephone numbers include (i) land line 716-854-7648, (ii) land line 716-
834-6590, and (iii) cellular phone numbers 716-553-7299, 716-316-9179, 716-854-1107, and 716-316-
4548.  However, the Government represents it will only use evidence derived from the Intercept Orders
identified in the above paragraph.  As such, the court limits its consideration to the Intercept Orders in the
above paragraph and need not consider any challenge to the other wiretap orders obtained in this case.

[10] The Government cites the pager number for the Nolley Order I as 360-0057.  Government's
Response at 6.  However, the number is noted to be 716-369-0057 in the corresponding ten-day reports
and Electronic Communication Service Order.  (Intercept Order No. 04-MISC.CR-22).  As such, in this
Report and Recommendation the court identifies the pager number as 716-369-0057.

The Intercept Orders were executed between February 11, 2004 and August 3, 2004.
*Id.* at 5.  Pursuant to this surveillance, the Government intercepted numerous
conversations regarding the alleged possession and distribution conspiracy between
Richardson, Frederick Nolley, Richard Mullen and other Defendants.

The Grand Jury subsequently charged Richard Mullen, Richardson, Frederick
Nolley, Stranc, Edmond, Pressley, and Hall in the initial indictment filed on July 29,
2004.  Several arrests and search warrants were authorized in the instant case,
including the search warrants for Richard Mullen's residence at 90 Sussex Street, for
his business located at 1202 East Delevan Avenue, and for his 1998 Ford Expedition;
for Defendant  Palmer's residence at 475 Shirley Avenue; for Defendant Adams's
residence at 928 Humboldt Parkway, Upper; for Defendant Cooper's residence at 135
Zenner Street, Upper; and for Defendant Terry Mullen's residence at 90 Sussex, Lower,
all located in Buffalo, New York.

Agents searched Richard Mullen's Ford Expedition on August 2, 2004, and
arrested Mullen pursuant to a bench warrant.  Government's Response at 8.  Federal,
state and local law enforcement agents executed search warrants on August 3, 2004, in
Buffalo and Niagara Falls, New York, and against Mullen's vehicle in Henrietta, New
York, resulting in the seizure of numerous items, including (1) currency, (2) cell phones,
(3) weapons and ammunition, (4) holsters, (5) cartridges, (6) cartridge magazines, (7) a
semi-automatic magazine, (8) drug paraphenalia, (9) unidentified pills, (10) cocaine,
(11) cocaine base, (12) crack cocaine, (13) crack stems, (14) marijuana, (15) white
powder "and chunks," (16) "white powder substance," (17) "green vegetable matter,"
(18) a "green, leafy substance," (19) "white, chunky substance," (20) packaging

13

material, (21) scales, (22) two-way radios, (23) paperwork, (24) documents, (25) bank

records, (26) automobiles, (27) keys, (28) safes, (29) computers, (30) paystubs, (31)

two silver swords, (32) razor blades, at least one of which contained white, powdery

residue, (33) a notebook, (34) a computer tower, (35) a heat sealer (36) and a glass

plate.  Government's Response at 8-11; Government's Supplemental Response at 1.


## DISCUSSION

### I.   <u>Suppression of Intercepted Electronic Communications</u>

The intercepted communications the Government represents it will use as

evidence at trial were authorized by Intercept Order Nos. 04-MISC.CR-15 as to 716-

570-2102 ("target telephone I")  and 716-578-2781 ("target telephone II") ("Richardson

Order I", "Richardson Order I, 1st Extension" and "Richardson Order I, 2nd Extension");

04-MISC.CR-22 as to Frederick Nolley's pager number 716-369-0057 ("Nolley Order I");

04-MISC.CR-27 as to 716-602-0413 ("Nolley Order II"); 04-MISC.CR-44 as to 716-578-

2614 ("Mullen Order I"); 04-MISC.CR -55 as to 716-818-2697 ("Nolley Order III"); 04-

MISC.CR-75 as to 716-400-7307 ("Mullen Order II"); 04-MISC.CR 81 as to 716-308-

0672 ("Mullen Order III").  Government's Response at 6.

Defendants Richard Mullen, Terry Mullen, Sanger, Drake, Ayanna Nolley,

McKnight, Lee, Funderburk, and Adams move to suppress any and all evidence derived

from electronic eavesdropping in this case, arguing that the Intercept Orders authorizing

the eavesdropping activity were not supported by probable cause or necessity in

violation of 18 U.S.C. § 2518.  *E.g.*, Eaonnou Affirmation ¶ 80.  The Government

controverts the factual allegations recited by Moving Defendants in support of

suppression and Defendants' legal contentions.  Government's Response at 6, 34-51.

Specifically, the Government maintains (1) probable cause supports all of the Intercept

Orders; (2) Judge Skretny was informed in each affidavit in support of each order he

issued that the DEA corroborated information provided by Defendant Frederick Nolley,

who the Government determined was a reliable informant; (3) Agent Laskowski's

original and subsequent affidavits describing the basis for the investigator's

determination that CS-4 was reliable was the result of, in part, the informant's

participation in "consensually recorded telephone calls for the DEA"; and (4) even if one

or more of the orders were not supported by probable cause, Moving Defendants have

not shown, under *United States v. Leon*, 468 U.S. 897, 926 (1984), that as to any of the

Intercept Orders "(1) the issuing judge abandoned his detached, neutral role; (2) the

agent was dishonest or reckless in preparing his affidavit; or (3) the agents' reliance on

any order was not reasonable," thus defeating Defendants' motions even assuming any

lack of probable cause.  Government Response at 36-39.


   A.   **Standing**

_____Under 18 U.S.C. § 2518(10)(a), only an "aggrieved person" may move to

suppress information obtained pursuant to an electronic intercept order.  An aggrieved

person is defined as "a person who was a party to any intercepted wire, oral, or

electronic communication or a person against whom the interception was directed."  18

U.S.C. § 2510(11); *United States v. Fury*, 554 F.2d 522, 525-26 (2d Cir.), *cert. denied*,

433 U.S. 910 (1977) ("a person who was not named in the wiretap order and was not a

party to a conversation intercepted during that tap is not an 'aggrieved person' and may

not move to suppress information derived from it.").

_____Accordingly, the court considers Moving Defendants' challenges to the Intercept Orders only insofar as each Moving Defendant is named in or had conversations intercepted pursuant to any particular order.  In this case, Defendants Richard Mullen and Drake are the only Defendants named in each Intercept Order upon which the Government will rely at trial.  As such, they have standing to challenge any or all of those orders.  Defendant Funderburk challenges the Richardson I and Nolley III Orders (first and second extensions) requesting suppression of the conversations to which Funderburk was a party in Nolley III on the ground that the Richardson I Order, upon which the Nolley III Order was based, was issued without probable cause. Funderburk's Motion ¶¶ 102, 107.

Because Funderburk was not mentioned in any Intercept Order upon which the Government intends to rely but allegedly participated in conversations obtained pursuant to the Nolley III Order, Funderburk only has standing to challenge the Nolley III Order.  18 U.S.C. § 2510(11); *Fury, supra,* at 525-26 (a person who is a party to an intercepted communication or one "against whom the order was directed" has standing to challenge the order's probable cause foundation or its necessity).  However, the basis for Funderburk's challenge to the Nolley III Order is that the affidavits submitted by Task Force Agent Jennifer A. Catania in support of the first and second extensions of the Nolley III Order rely upon and "incorporate by reference each of the previous interception applications and orders, as outlined above, to supply the necessary probable cause for their issuance."  Funderburk's Motion ¶¶ 103.  As such, Funderburk

asserts that he may challenge the probable cause underlying any of the previous orders and, in particular, the probable cause of the Richardson I Order.   However, as the court determined, Discussion, *infra,* at 23-29, the Richardson I Order is amply supported by probable cause.  Thus, Funderburk's argument that Nolley III is unsupported by probable cause in that Richardson I is unsupported by probable cause is without merit, and his asserted standing need not be addressed as to such incorporated Intercept Orders.

Defendants Lee, Sanger, Terry Mullen, McKnight and Ayanna Nolley have standing to challenge particular Intercept Orders upon which the Government relies insofar as Defendants allege they were parties to an intercepted communication or the target of such communication based on such Intercept Orders.  With the exception of Defendant Kenya Lee, who claims to have standing to challenge the intercepted communications by asserting "the Government was able to intercept some phone calls from . . . Lee to Frederick Nolley," Stachowski Affirmation ¶ 100, Defendants Sanger, Terry Mullen, McKnight and Ayanna Nolley do not specify under which Intercept Orders their respective conversations were intercepted.  For example,  Defendants Sanger, Terry Mullen and Ayanna Nolley submit a general contention that each is "an aggrieved person and has standing to contest the electronic surveillance in that [he/she], or a telephone account in [his/her] name, is a named target of such eavesdropping warrants and, further, interception and recording of telephonic communications allegedly involving the Defendant . . . have been obtained thereby," but fail to identify the specific intercepted conversations to which these Defendants claim to have standing to move to

suppress, nor do they allege a basis for standing.[11]   Torre Affidavit ¶ 34; LaMendola

Affidavit ¶ 36; Meyers-Buth Affidavit ¶ 36.  Defendant McKnight moved to join in his co-

Defendants' motions to suppress, but fails to identify on what ground McKnight had

standing to challenge the intercepted communications, nor did McKnight specify the

communications he challenges.  Hoffman Supplemental Affidavit ¶¶ 5-6; Hoffman

Affidavit ¶ 9(h).

In proceedings held before the undersigned on February 2, 2005, however, the

Government acknowledged that Defendant McKnight was intercepted through wiretaps

on Defendant Richardson's telephone.  Additionally, the court observes that Defendants

Sanger and McKnight were named in the portion of the Richardson I Order that was

effective from March 12, 2004 through April 11, 2004 and from April 21, 2004 through

May 20, 2004, and all other Intercept Orders except for that portion of the Richardson I

Order that was effective from February 11, 2004 through March 12, 2004 and the

portion of the Nolley II Order that was effective from February 20, 2004 through March

22, 2004 and from March 2, 2004 through March 31, 2004.  As such, Sanger and

McKnight have standing to challenge all Intercept Orders the Government will rely on at

trial except the Richardson I Order effective from February 11, 2004 through March 12,

2004 and the Nolley II Order effective from February 20, 2004 through March 22, 2004

and from March 2, 2004 through March 31, 2004, in which Sanger or McKnight are not

named and pursuant to which they do not specifically allege their communications were

intercepted.

---

[11] Bracketed material added.

Defendant Adams is not named in the portion of the Richardson I Order effective from February 11, 2004 through March 12, 2004 and the Nolley II Order effective from February 20, 2004 through March 22, 2004 and from March 2, 2004 through March 31, 2004, nor were his conversations intercepted thereunder.  As such, Defendant Adams lacks standing to challenge these orders.  Adams is named in the Mullen I Order effective from March 26, 2004 through April 16, 2004; the Mullen II Order effective from May 7, 2004 through June 7, 2004; the Mullen II Order effective from May 7, 2004 through June 7, 2004; the Mullen III Orders effective from May 28, 2004 through June 26, 2004 and from July 12, 2004 through August 2, 2004; the Richardson I Orders effective from March 12, 2004 through April 11, 2004 and from April 21, 2004 through May 20, 2004; the Nolley III Orders effective from April 12, 2004 through May 12, 2004, from May 21, 2004 through June 19, 2004 and from July 2, 2004 through July 31, 2004; and the Nolley II Order effective from April 2, 2004 through April 30, 2004.  Accordingly, Adams has standing to challenge the Intercept Orders in which he is named to the extent described above.

Defendant Terry Mullen is named in the Mullen II Order effective from May 7, 2004 through June 7, 2004; the Nolley II Order effective from April 2, 2004 through April 30, 2004; the Nolley III Order effective from May 21, 2004 through June 19, 2004 and from July 2, 2004 through July 31, 2004; the Mullen III Order effective from May 28, 2004 through June 26, 2004 and from July 12, 2004 through August 2, 2004; and the Richardson I Order effective from April 21, 2004 through May 20, 2004.  As such, Defendant Terry Mullen has standing to challenge the Intercept Orders in which he is named as indicated above.

Finally, Defendant Ayanna Nolley is named in the Mullen II Order effective from May 7, 2004 through June 7, 2004; the Mullen III Order effective from May 28, 2004 through June 26, 2004 and from July 12, 2004 through August 2, 2004; the Nolley II Order effective from April 2, 2004 through April 30, 2004; the Nolley III Order; and the portion of the Richardson I Order effective from April 21, 2004 through May 20, 2004. Therefore, Defendant Nolley has standing to challenge the Intercept Orders in which she is named, as stated above.

As discussed, Discussion, *supra,* at 17, although Defendant Lee alleges he was intercepted over some phone calls he made to Frederick Nolley, Lee does not identify under which of the three Nolley Intercept Orders these calls were intercepted.  Further, the court notes that Kenya Lee is not named in any of the Nolley Intercept Orders, their related underlying applications, or any applications supporting any Intercept Orders upon which the Government intends to rely at trial.  Without specifically identifying under which Nolley Order the conversation(s) were intercepted sufficient to confer standing upon Lee, the court is unable to consider Lee's motion to suppress the Intercept Orders as asserted.  *United States v. Maggadino*, 496 F.2d 455, 460 (2d Cir. 1974) (burden on defendant to establish standing to challenge legality of electronic intercept warrants) (citing *United States v. Sacco*, 436 F.2d 780, 784 (2d Cir. 1971) ("Defendant has the burden of showing that he has standing to challenge admission of the seized evidence.")).  *See also United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("Party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.") (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978)); *United States v. Gallo*, 863 F.2d 185, 192 (2d

Cir. 1988) (motion to suppress wiretap evidence pursuant to 28 U.S.C. § 2518(10)(a)(iii)

"to be construed in accordance with standing requirements usually applied to

suppression claims under Fourth Amendment.") (citing *Alderman v. United States*, 394

U.S. 165, 175-76 & n.9) (1969)), *cert. denied*, 489 U.S. 1083 (1989).  Accordingly,

Lee's motion to suppress should be DENIED.[12]

###       B.    Probable Cause

        As noted, Defendant Richard Mullen challenges each of the Intercept Orders as

issued without probable cause.  Eaonnou Affirmation ¶¶ 80-97.  Defendant Funderburk

challenges the Richardson I and Nolley III Orders on the same basis.  Funderburk

Motion ¶¶ 107-115.  The remaining Moving Defendants who have moved to suppress

the intercepted communications argue that the relevant Intercept Orders are deficient

based, in part, on a lack of probable cause.  Specifically, Defendants Sanger, Ayanna

Nolley, and Terry Mullen challenge the probable cause basis for the orders, but do not

specify which orders were issued without probable cause, nor do these Defendants

provide reasons to support this contention.  Defendant McKnight requests that he be

allowed to join in his co-Defendants' motions and to assert his standing as an

"aggrieved party," but McKnight does not specifically identify any defect upon which a

particular order was based, such as the absence of probable cause or a lack of

necessity.  Hoffman Affidavit ¶ 9(h).  Finally, Defendant Lee challenges the probable

cause for all of the Intercept Orders, although Lee is not named in any of the orders.

-------------------------------------------------

[12]  There is no reason to discuss Moving Defendants' standing regarding searches pursuant to warrants issued by the undersigned, as to their respective residences and vehicles, and the Government does not contest such standing.

Lee also claims to be a party to "some of the intercepted conversations," but does not specify to which conversations he was a party.  Stachowski Affirmation ¶ 88. Accordingly, as Lee fails to establish his standing to challenge the Intercept Orders, Discussion, *supra*, at 20-21, Lee's motion should be DENIED.

The same standard for assessing probable cause governs an application to intercept electronic communications over a digital display pager as for a wiretap or eavesdropping warrant issued pursuant to 18 U.S.C. § 2518.  *United States v. Rodriguez*, 968 F.2d 130, 135 (2d Cir. 1992), *cert. denied*, 506 U.S. 847 (1992).[13] Additionally, it is well settled that the standard for assessing probable cause for an eavesdropping warrant is no different from that required for a search warrant.  *United States v. Fury,* 554 F.2d 522, 530 (2d. Cir. 1977), *cert. denied*, 433 U.S. 910 (1977).  In determining whether probable cause for an eavesdropping warrant exists, the issuing officer need only make a practical, common sense decision whether, given the "totality of the circumstances" set forth in the affidavit requesting such warrant, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be obtained through the use of electronic surveillance.  *See Illinois v. Gates,* 462 U.S. 213, 238-39 (1983).

An affidavit in support of an application for an eavesdropping warrant demonstrates probable cause when it sets forth facts which are sufficient, under the

---

[13] The term "interception" is defined as "the aural *or other* acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical or other device.  18 U.S.C. § 2510(4)( emphasis added).  Further, the phrase "or other" was inserted into the definition of "interception" as "part of a modernization of Title III to ensure protection for new forms of communication such as electronic pagers, electronic mail, and computer-to-computer communications."  *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir.), *cert. denied*, 506 U.S. 847 (1992).

circumstances, to indicate a fair probability of criminal activity. *United States v. Rowell,* 903 F.2d 899, 902 (2d Cir. 1990) (citing *Gates, supra,* at 236). Further, a judge's determination of probable cause should be given great deference by a reviewing court. *Gates, supra*, at 236; *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990). The resolution of close cases should be determined by the preference accorded to warrants. *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993).

The court will address only Defendants Mullen's, Funderburk's, Sanger's, Ayanna Nolley's and Terry Mullen's general challenges to probable cause for the relevant Intercept Orders as urged by Moving Defendants. Moving Defendants challenge the Intercept Orders on the basis that the reliability of the confidential informants, referred to in the respective applications, particularly Frederick Nolley, who provided information upon which the orders, including the Richardson I Order, were issued, was not sufficiently established in the application. Specifically, Defendant Richard Mullen maintains the information provided by Frederick Nolley is inherently unreliable. Eaonnou Affirmation ¶¶ 87-93. Mullen asserts that Nolley cooperated with the Government to avoid future charges in exchange for providing the Government with information while minimizing his own role in the alleged conspiracy. *Id.* ¶¶ 86-87. With regard to the three confidential informants who provided information in the application about Richard Mullen and upon which the investigators relied in securing the Intercept Orders, Mullen argues that in addition to an insufficient showing of reliability, the information provided by these informants failed to establish the requisite probable cause for the orders. *Id.* ¶ 89. Mullen further contends that the first confidential source, CS-1, relied on in the application for the Richardson I order, may only establish

23

probable cause regarding Frederick Nolley's alleged involvement, and not Mullen's, in this case because CS-1 was another drug trafficker who worked for Frederick Nolley and "who gave information in exchange for consideration from the government." *Id.* ¶ 90.

Defendant Mullen further argues that the information proffered by the second confidential informant, CS-2, cannot establish probable cause sufficient to authorize a wiretap order against Mullen because CS-2, who identified Frederick Nolley "in a scheme to facilitate the flight of Michael Stranc from the jurisdiction," does not name Richard Mullen.  Eaonnou Affirmation ¶ 91.  Mullen also concludes that the third confidential informant, CS-3, does not establish probable cause for Mullen's involvement in the narcotics conspiracy because, although CS-3 describes Defendant Richardson's involvement in the conspiracy, CS-3 does not mention Richard Mullen. Eaonnou Affirmation ¶ 92.  Finally, Mullen argues that the fourth confidential informant, CS-4, whom the agents relied upon is unreliable because CS-4 also faces drug charges and only provided information in exchange for leniency.  Eaonnou Affirmation ¶ 93.

The factors that courts find sufficient to establish the reliability of informants in issuing warrants include that (1) the informant's statements qualified as admissions against penal interest by admitting to personal involvement in the alleged criminal activity, (2) the informants were witnesses to the alleged criminal activity, (3) the statements were corroborated by other investigative techniques such a pen register records, and (4) the informant was not a professional informant.  *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990).  However, contrary to Moving Defendants' contentions, the reliability of the confidential informants as to each of the Intercept

Orders challenged on this basis can be established under one or more of these factors.

As stated, Defendant Richard Mullen asserts that the information provided by Frederick Nolley is "inherently unreliable" because of Nolley's interest in diminishing charges filed against Nolley in exchange for his cooperation.  Eaonnou Affirmation ¶ 87. At oral argument, counsel for Richard Mullen argued that only conclusory statements as to Richard Mullen were made to secure the Richardson I Order, and nothing from the Mullen I Order was sufficiently incriminating as to support the Mullen II Order.  (Docket Item No. 252).  The Government counters by maintaining that the DEA was able to corroborate information Frederick Nolley provided to the DEA to support both orders which included information regarding the Stranc and Mullen traffic stops in Kansas, and the related drug seizure from Stranc's car, and that these facts were presented to Judge Skretny, who issued the Mullen II Order, in affidavits submitted in support of each order.  Government's Response at 37.  Additionally, the Government represented at oral argument that the core probable cause relied upon for the Richardson I Order was the cocaine seizure, in Kansas, from the vehicle in which Stranc was traveling to Buffalo as a drug courier for Mullen's cocaine distribution operation.  The Government also contended that Judge Skretny properly considered Frederick Nolley to be a reliable informant, based on factors found in *Rowell, supra,* sufficient to establish the reliability of the wiretap application informants in that Nolley made admissions against his penal interest and that Nolley's statements were corroborated by the DEA.  Government Response at 37.  This information, coupled with the fact that Nolley admitted to personally participating in Mullen's drug trafficking organization, was also included in DEA Agent Laskowski's affidavit in support of the Richardson I Order and accepted by

Judge Skretny.  Affidavit of Agent Robert J. Laskowski in Support of Intercept Order No. 04-MISC.-CR-15 ("Laskowski Affidavit") ¶¶ 12-14.  Therefore, based on the relevant factors, *Rowell, supra*, at 903, the court finds that Nolley was a sufficiently reliable informant whose statements supported a finding of probable cause for the Richardson I Order.

Defendant Mullen also contends that the information provided by CS-1, CS-2, and CS-3 cannot be relied on to establish probable cause as to Mullen's alleged involvement in the conspiracy.  Eaonnou Affirmation ¶¶ 90-92.  However, a plain reading of Agent Laskowski's affidavit, submitted in support of the Richardson I Order, reveals that CS-1 was personally involved in drug transactions with members of the Mullen narcotics conspiracy and that CS-1 provided a description of specific conduct by Mullen in furtherance of the conspiracy.  Laskowski Affidavit ¶¶ 26-27 ("Upon returning to Buffalo, CS-1 met with Mullen to give him [Mullen] the cocaine," *Id.* ¶ 26;[14] and "Mullen again approached CS-1 and asked if he/she was interested in working as a drug courier.")  *Id.* ¶ 27.

The Laskowski affidavit further indicates that Frederick Nolley, CS-1, and CS-3 made admissions against their penal interests in statements to law enforcement. Laskowski Affidavit ¶¶ 12, 23, 42.  However, the information proffered by CS-2 concerns only Defendants Stranc and Frederick Nolley, and the information provided by CS-3 implicates only Defendant Richardson.  Laskowski Affidavit ¶¶ 41-45. Nevertheless, the court finds that, with regard to the information provided by CS-3, and

---

[14] Bracketed material added.

26

as presented to Judge Skretny in Agent Laskowski's Affidavit, probable cause was established as to Defendant Richardson in that CS-3 provided such statements against penal interest and the information provided by CS-3 had been corroborated, where possible.  Laskowski Affidavit ¶ 42.  Therefore, Judge Skretny properly credited CS-3's information as to the existence of the conspiracy.  Thus, even assuming CS-3 did not directly attempt to incriminate Mullen, several factors supported CS-3 as a credible source.

Defendant Mullen also attacks the information provided by CS-4, arguing that CS-4 made the purported admissions in exchange for leniency, that CS-4 made conclusory statements regarding Mullen's alleged role in the conspiracy, and that nothing contained in the affidavits establishes CS-4's source of knowledge.  Eaonnou Affirmation ¶ 93.  However, Defendant Mullen's assessment finds no support in Agent Laskowski's affidavit.  For purposes of establishing probable cause, the Second Circuit considers an informant to be reliable if such information "is based on reliable means, such as first-hand observations or second-hand information from reliable sources, rather than unreliable means such as rumor or inuendo," and will find information "sufficiently reliable" where it has been "corroborated in material respects by independent evidence."  *United States v. Wagner,* 989 F.2d 69, 72-73 (2d Cir. 1993).  Here, the information supplied by CS-4 was personally obtained by CS-4 when CS-4 consensually recorded incriminating telephone calls for the DEA, including Richardson's statement that Mullen was one of Richardson's suppliers and that Mullen was assisted by Frederick Nolley who was then cooperating with the DEA.  Laskowski Affidavit ¶ 54.  Additionally, CS-4 made numerous admissions against penal interest and CS-4's

statements were corroborated, where possible, by the DEA investigators.  *Id.*  The court therefore finds that the agents supplied Judge Skretny with facts supporting CS-4's reliability sufficient to establish probable cause for the Richardson I Order.

Mullen also claims CS-2's information was unreliable on its face as such information was hearsay and not based on first-hand knowledge.  However, as discussed, Discussion, *supra,* at 25-27, in this case the wiretap applications at issue are based on information provided by several other confidential informants and Frederick Nolley, in addition to the information as received from CS-2.  Accordingly, even if the information provided by CS-2 and CS-3 were considered to be insufficient to establish probable cause as to Defendant Mullen as a basis for the Richardson I Order, as Mullen contends, the statements provided by Frederick Nolley, CS-1 and CS-4 establish, notwithstanding, the required probable cause against Mullen as each informant either offered statements to the DEA qualifying as admissions against their penal interests, including admitting to personal involvement in the alleged criminal narcotics activity, the information was based on their personal observation of the alleged criminal activity, and CS-1 and CS-4 provided statements corroborated by other investigative techniques such pen register records and Nolley's incriminating information.  Laskowski Affidavit ¶¶ 5, 12, 23, 42.  *See Wagner,* 989 F.2d at 72-73. *Illinois v. Gates*, 462 U.S. at 214 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). *See United States v. Rowell*, *supra,* at 903. Thus, taken as a whole, the information contained in the affidavits challenged by

Moving Defendants set forth facts sufficient to indicate a fair probability of criminal activity in the nature of a wide-spread narcotics trafficking conspiracy involving Richardson and Mullen.  *Rowell,* 903 F.2d at 902 (2d Cir. 1990) (citing *Gates, supra,* at 236).  As such, Moving Defendants' motions to suppress intercepted electronic communications, resulting from the Intercept Orders, based on this ground should be DENIED.

As stated, Funderburk contends the conversations he was a party to in the Nolley III Order, including the first and second extensions, approved by Judge Skretny, should be suppressed because the Richardson I Order, upon which the Nolley III Order was predicated, was issued without probable cause.  Funderburk Motion ¶ 108.  Based on its rejection of Moving Defendants' contention that the Intercept Orders were issued without probable cause, Discussion, *supra,* at 21-29, the court has determined that the Richardson I Order, upon which the application for the Nolley III order was based, is supported by probable cause.  Thus, Funderburk's challenge to the Nolley III Order for lack of probable cause fails, and his motion to suppress on this ground should be DENIED.

Even if it were assumed that any of the Intercept Orders were issued without probable cause, Moving Defendants have not provided any grounds to conclude the challenged wiretaps would not qualify for the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984).  Although the Second Circuit has yet to determine whether *Leon*'s good faith exception applies to electronic surveillance such as the intercept orders in this case, other circuits, as well as district courts within the Second Circuit, have so held.  *See, e.g., United States v. Moore*, 41

F.3d 370, 376 (8th Cir. 1994) (court considered the discretionary language of 18 U.S.C.

§ 2518(10)(a) combined with the statute's legislative history, which "expresses a clear

intent to adopt suppression principles developed in Fourth Amendment cases," to

indicate the exclusionary rule applies to §2518(10)(a) suppression issues), *cert. denied*,

514 U.S. 1121 (1995); *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir.

1988) (court analyzed information contained in the wiretap application under the

deterrence theory of the exclusionary rule), *cert. denied*, 489 U.S. 1024 (1989); *United

States v. Gotti,* 42 F.Supp.2d 252, 267 (S.D.N.Y. 1999) (court extended the good faith

doctrine in *Leon* to wiretaps where warrants were not facially deficient and where the

agents reasonably relied upon the information contained therein); *United States v.

Bellomo*, 954 F.Supp. 630, 638 (S.D.N.Y. 1997) (court found "no principled basis" to

distinguish wiretap orders from other searches and seizures as to applicability of *Leon*)

(citing cases).  *But see United States v. Spadaccino*, 800 F.2d 292, 296 (2d Cir. 1986)

(suggesting, but not holding, that *Leon* may not apply to challenges to intercept orders

pursuant to the federal wiretap statute as suppression is a legislative remedy intended

to compel compliance with statutory, not only Fourth Amendment, notice requirements).

### C. Staleness

The Government asserts that Defendant Lee contended certain information

supporting the wiretap orders was stale.  Government's Response at 38.  However, the

court's review of Lee's motion indicates no such argument was made.  Accordingly,

Defendant Lee's motion on this ground should be DISMISSED.  At oral argument,

Defendant Palmer's attorney alleged that the search warrant issued for Palmer's home was not supported by probable cause because it was stale.  Docket Item No. 252.  In particular, Palmer's attorney contended there were three alleged conversations that took place between Defendants Richardson and Palmer in March 2004.  *Id.*  As such, Palmer's attorney argues that there was no probable cause for the search warrant issued in August 2004 because agents could not reasonably have expected to find evidence of criminal activity approximately five months after the conversation took place.  The court does not agree.

"'[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law.'"  *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)), *cert. denied,* 458 U.S. 1110 (1982).  "Moreover, '[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which courts have relaxed the temporal requirements of non-staleness.'"  *Rowell, supra* (citing *United States v. Feola*, 651 F.Supp. 1068, 1090 (S.D.N.Y. 1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989)).  In *Rowell, supra*, the court held that information as old as 18 months need not be suppressed on the basis of staleness, particularly with regard to the investigation of a narcotics conspiracy.  *Rowell, supra*, at 903.  Here, the information which Palmer maintains was stale was also obtained during the investigation of a narcotics conspiracy and, as less than six months old at the time of the relevant application, was significantly fresher than the information at issue in *Rowell*.  Further, Palmer's attorney offers no authority for his contention that the particular time period applicable to the search warrant for Palmer's residence

necessarily invalidates the probable cause foundation for the warrant on staleness grounds.  Accordingly, Palmer's staleness claim is without merit and Palmer's motion should be DENIED on that ground.

### D.    Necessity

Defendants Richard Mullen, Funderburk, Sanger, Ayanna Nolley, Terry Mullen, Lee and Adams challenge the necessity of the initial eavesdrop application and the necessity of every extension application obtained thereafter.  These Defendants contend the Government did not adequately establish that it had employed other, conventional means of investigation without success or the reason why such means, if employed, would not uncover criminal activity as required by 18 U.S.C. § 2518 (3)(c) ("§ 2518(3)(c)").  Eoannou Affirmation ¶ 96; Funderburk Motion ¶¶ 107- 128; Torre Affidavit ¶ 39; Meyers-Buth Affidavit ¶ 41; LaMendola Affidavit ¶ 41; Stachowski Affirmation ¶¶ 106-109; LaTona Affidavit ¶ ¶  41, 54.  Additionally, Defendants contend that statements proffered by the DEA investigators to show the necessity of such electronic surveillance are conclusory and "boilerplate" in nature, and that the applications for electronic surveillance reference numerous confidential informants that witnessed the narcotics activity, thus demonstrating that wiretapping was not essential to the investigation.  Torre Affidavit ¶ 37; Meyers-Buth Affidavit ¶ 39; LaMendola Affidavit ¶ 39; LaTona Affidavit ¶ 54.

The Government contends the Defendants' challenges misunderstand the governing law and ignore the justification for the electronic surveillance in the affidavits submitted in support of the challenged Intercept Orders.  Government's Response at

40.  Specifically, the Government contends that each supporting affidavit contained facts that were "more than minimally adequate to support . . . [Judge Skretny's] determination" that electronic interception was warranted and identified the investigative techniques that were attempted or used and included reasons why others were not used.  Government's Response at 42-43.[15]  The Government therefore submits that this information, as provided to Judge Skretny, was sufficient to determine the necessity of the requested  electronic surveillance.  *Id.* (citing *United States v. Ruggiero*, 726 F.2d 913, 924 (2d Cir. 1984), *cert. denied*, 469 U.S. 831 (1984)).  Specifically, in this case, according to the Government, the investigative techniques that either were used, were attempted and failed, or were not used as described in the affidavits submitted include "the use of informants; the use of grand jury subpoenas; the use of physical surveillance; the interview of targets; the review of pen register information; the use of search warrants or trash runs; and the use of undercover agents."  Government's Response at  42-43. The Government further contends that electronic surveillance was necessary to obtain a conviction of the members of Mullen's narcotics conspiracy.  *Id.* at 42.  Finally, the Government argues that Defendants have not made a "substantial" showing that any supporting affidavit was made with "deliberate falsity or reckless disregard for the truth."  *Id.* at 44.

As required by §2518(3)(c), an application for an electronic intercept order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to

---

[15] Internal quotation omitted and bracketed material added.

succeed if tried or to be too dangerous." The purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques. *United States v. Torres,* 901 F.2d 205, 231 (2d Cir. 1990), *cert. denied,* 498 U.S. 906 (1990). Thus, courts have held that the requirement of § 2518(3)(c) must be construed in a practical, common sense and realistic fashion. *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied*, 425 U.S. 971 (1976). The statute does not require that all possible techniques be exhausted in fact before a wiretap may be authorized, but, rather, "[a]n affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every possible means of the investigation has not been exhausted." *United States v. Terry*, 702 F.2d 299, 310 (2d Cir.), *cert. denied*, 461 U.S. 931 (1983).

In this case, each of the challenged affidavits demonstrates compliance with the necessity requirements for the issuance of Intercept Orders. Specifically, each of the intercept applications include an affidavit from a DEA agent directly involved in the investigation of the alleged narcotics trafficking conspiracy detailing why other investigative techniques are not likely to be effective. Laskowski Affidavit in Support of Intercept Order No. 04-MISC. CR-15 effective from February 11, 2004 through March 12, 2004 (¶¶ 76-95), from March 12, 2004 through April 11, 2004 (¶¶ 89-92), and from April 21, 2004 through May 20, 2004 (¶¶ 41-48); Affidavit of DEA Agent William Donovan ("Donovan Affidavit") in Support of Order No. 04-MISC.CR-22 ¶ 15; Affidavit of DEA Agent Daniel F. Rinaldo ("Rinaldo Affidavit") in Support of Intercept Order No.

04-MISC.CR-27 effective from March 2, 2004 through March 31, 2004 (¶¶ 16-28), and

from April 2, 2004 through April 30, 2004 (¶¶ 20-31); Affidavit of DEA Special Agent

Dale M. Kasprzyk ("Kaspryzk Affidavit") in Support of Intercept Order No. 04-MISC.CR-

44 ¶¶ 19-32; Affidavit of DEA Agent Jennifer A. Catania ("Catania Affidavit") in Support

of Intercept Order No. 04-MISC.CR-55 effective from April 12, 2004 through May 12,

2004 (¶¶ 18-30), from May 21, 2004 through June 19, 2004 (¶¶ 16-29), and from July 2,

2004 through July 31, 2004 (¶ 65-82); Kaspryzk Affidavit in Support of Order No. 04-

MISC.CR-75 ¶¶ 43-58; Kaspryzk Affidavit in Support of Order No. 04-MISC.CR-81

effective from May 28, 2004 through June 26, 2004 (¶¶ 127-141), and from July 12,

2004 through August 2, 2004 (¶¶ 42-59)  ("Agents' Affidavits").

     Each of these affidavits describes other techniques that have been used in the

investigation, including telephone call toll records, pen register analysis, physical

surveillance, obtaining the criminal history of the subjects of the investigation, a grand

jury subpoena of Moshe Friedlander's bank records and the persons and businesses

associated with him relative to a money laundering investigation associated with this

case, and why such methods such as grand jury subpoenas, infiltration of the

suspected conspiracy by undercover agents and securing search warrants, for

example, were impractical at that time.  *E.g.*, Laskowski Affidavit in Support of

Richardson I Order from February 11, 2004 through March 12, 2004 ¶¶ 76-96.  For

example, although DEA agents in this investigation had conversations with reliable

informants, the agents nevertheless represented they received limited cooperation from

such informants.  *E.g.,* Laskowski Affidavit in Support of Richardson I Order from

February 11, 2004 through March 12, 2004 ¶¶ 22, 34, 37-39, 45.  Further, according to

Agent Laskowski, targets of the investigation had proven themselves to be conscious of surveillance so that prolonged physical surveillance, required to identify all members of the conspiracy and their *modus operandi,* was ineffective.  *Id.* ¶ 90*.*

Despite such attempted investigative techniques, the full extent of the conspiracy including, *inter alia*, the identity of all of its members and their respective distribution networks, the conspiracy's methods of drug supply, particularly the identity of Richardson's and Richard Mullen's narcotics sources of supply in New York City and Los Angeles,[16] the means of financing the purchase of the drugs, the scope of Richard Mullen's and Richardson's narcotics-related activities, the location where drugs and proceeds were stored and the members of the conspiracy and their methods for disposing of the narcotics, could not be readily determined.  *E.g.*, Laskowski Affidavit in Support of Richardson Order I from February 11, 2004 through March 12, 2004 ¶¶ 76-78.  Similar affidavits, stating that despite use of visual surveillance and pen registers employed against suspected members of the conspiracy for several months during the interceptions and the receipt of informant information, agents were unable to determine the extent of a drug trafficking conspiracy, have been held sufficient to establish the need for an intercept order.  *See United States v. Torres,* 901 F.2d 205, 231-32 (2d Cir. 1990), *cert. denied,* 498 U.S. 906 (1990); *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987); *United States v. Puglisi*, 790 F.2d 240, 241-42 (2d Cir.), *cert. denied*, 479 U.S. 827 (1986).

Defendants Adams and Funderburk argue the intercepted communications

---

[16] It is relevant that Defendant Stranc was discovered to be transporting narcotics from Los Angeles to Buffalo on behalf of Mullen.  Facts, *supra,* at 11.

obtained pursuant to the Richardson I and Nolley III wiretap orders should be suppressed because the orders contravene the Second Circuit's holding that "generalized and conclusory statements that other investigative procedures would prove unsuccessful" are insufficient to establish the requisite necessity for authorizing such an order.   LaTona Affidavit ¶¶  49-54; Funderburk's Motion ¶¶ 117-128 (citing *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983)).  Defendants contend that, as in *Lilla*, evidence derived from the orders in the instant case must be suppressed because the statements made in the supporting affidavits do not establish this case is more than a "small time narcotics case."  *Id.*

        The court finds the facts of the instant case distinguishable from those in *Lilla*. In the instant case, the initial investigation began in March 2003, approximately one year before the Richardson I order was authorized and approximately 1 ½ years before the initial indictment in this case. During this time, the investigation consisted of obtaining information from at least four informants who provided information to Agent Kasprzyk and Detective Rinaldo regarding the drug trafficking activities of members of the alleged conspiracy, some of which described drug trafficking between New York City and Buffalo, and between New York and Los Angeles; the arrest of Defendant Stranc while transporting narcotics from Los Angeles to Buffalo and the related questioning in March 2003 of Defendants Richard Mullen, Frederick Nolley and Edmond while traveling to Buffalo through Kansas in proximity with Stranc; information regarding the earlier arrest in January 2003 of Wesley Alleyne and Billy Gene Lee in Omaha, Nebraska and a corresponding cocaine seizure; consensually monitored, incriminating calls made by certain informants to Defendant Richardson; toll and pen

register analysis over target telephones of interceptees and violators; and surveillance

of Richardson, Richard Mullen and Frederick Nolley.  Government's Response at 4-7;

Laskowski Affidavit in support of Richardson Order from February 11, 2004 through

March 12, 2004 ¶ 79.  As the Second Circuit in *Puglisi, supra,* stated

> This [information] stands in stark contrast to *United States v.
> Lilla*, 699 F.2d 99, 104-05 (2d Cir. 1983), where, less than a
> month after being informed that Lilla was selling narcotics,
> and after buying marijuana directly from Lilla, a state trooper
> obtained an eavesdropping warrant solely on the strength of
> his representations that no other method would reveal Lilla's
> co-conspirators.

*United States v. Puglisi*, 790 F.2d 240, 242 (2d Cir.), *cert. denied,* 479 U.S. 827

(1986).[17]

Here, the extensive investigation that preceded application for the wiretap

orders, without identifying the true scope of the conspiracy, the identity of members or

related questions such as the exact source of supply and finance of the conspiracy,

demonstrated the necessity of such orders.  As noted, § 2518(3)(c) does not require all

other investigative procedures be exhausted before a wiretap order may be issued.

Discussion, *supra*, at 34.  In *Torres, supra,* the court upheld a wiretap order which

followed an extensive, 14-month investigation against a necessity challenge because,

unlike the "bare conclusions" contained in the supporting affidavits in *Lilla*, "the

affidavits . . . convincingly established that the Torres Organization was a large scale

operation which could not be adequately surveiled by traditional investigative methods."

*Torres,* 901 F.2d at 232.  Here, the Mullen conspiracy was geographically wide-ranging

---

[17] Bracketed material added.

and, as alleged by the Grand Jury, involved over 30 co-conspirators.

Under these circumstances, the court finds that, based on the affidavits submitted in support of the Intercept Order applications challenged by Defendants, the interception of electronic communications among the Defendant conspirators was necessary to obtain relevant evidence as other standard investigative techniques were not productive as of the date on which each such application was made. Defendants fail to explain how, as in *Lilla, supra,* standard investigative techniques could have been productively utilized prior to any of the applications or their respective extensions. Thus, the challenged applications amply satisfy the necessity requirement of § 2518(3)(c). Accordingly, Defendants' motion to suppress evidence obtained pursuant to the intercept orders on this basis should be DENIED.

### E.   Minimization and Failure to Record

Defendants Adams, Sanger, Drake, Ayanna Nolley and Terry Mullen contend that the agents "failed to properly minimize their interceptions," in violation of 18 U.S.C. § 2518(5) ("§ 2518(5)"). LaTona Affidavit ¶¶ 77-82; Torre Affidavit ¶ 36; Drake Motion Part VIII, ¶ 4; Meyers-Buth Affidavit ¶ 38; LaMendola Affidavit ¶ 38; Government's Response at 44. The court's consideration of this ground for suppression is hampered by Defendants' failure to state which call or series of calls they contend violate the minimization requirement of § 2518(5). *Id.*

Upon a defendant's claim § 2518(5)'s that minimization requirements were not met, the court must determine whether the actions of the agents conducting the telephonic surveillance were reasonable under the circumstances. *Scott v. United*

*States*, 436 U.S. 128, 137 (1978).  It is the government's burden to make a *prima facie*

showing of compliance with § 2518(5)'s minimization requirements.  *United States v.*

*Rizzo*, 491 F.2d 215, 217 n.7 (2d Cir.), *cert. denied*, 416 U.S. 990 (1974); *United States*

*v. Baker*, 443 F.Supp. 526, 531 (S.D.N.Y. 1977).  Once a *prima facie* showing is made,

the burden shifts to the defendant to show that, despite good faith compliance with the

minimization requirements, "substantial unreasonable interception of non-pertinent

conversations occurred," to the extent warranting suppression of evidence.  *United*

*States v. Ianiello*, 621 F. Supp. 1455, 1470 (S.D.N.Y.), *aff'd*, 824 F.2d 203 (2d. Cir.

1987).

        In determining the reasonableness of investigators' compliance with the statutory

minimization requirement, the Supreme Court stated that "blind reliance on the

percentage of non-pertinent calls is not a sure guide to the correct answer. . .there are

surely cases . . . where the percentage of non-pertinent calls is relatively high and yet

their interception was still reasonable." *Scott,* 436 U.S. at 140.  In analyzing the

reasonableness of the intercepts, the court must consider such factors as the extent of

the conspiracy and number of co-conspirators under surveillance, the stage of the

investigation, the length of the conversations being monitored, and the use to which the

telephone is typically put by the conspiracy.  *Scott, supra*, at 140-42.

        Even in situations where the percentage of non-pertinent calls is arguably large,

interception may nonetheless be reasonable.  *Scott,* 436 U.S. at 140.  For example,

many non-pertinent calls may be short in duration or have been only one-time calls.  *Id.*

Moreover, incomplete conversations for which there was no answer or conversations

lasting less than two minutes need not be minimized, as such a short time frame is "too

brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation." *United States v. Capra*, 501 F.2d 267, 275-76 (2d Cir. 1974), *cert. denied*, 420 U.S. 990 (1975).  Many of the alleged non-pertinent calls may be ambiguous in nature or in coded language.  *Scott, supra,* at 140.  Conversations using coded language may make correct characterization of the conversation, and thus any opportunity to minimize, impossible until the termination of the call.  *United States v. Millan*, 817 F. Supp. 1072, 1080 (S.D.N.Y. 1993).   Under these circumstances, it would be difficult for agents to realize such calls were non-pertinent prior to their termination.  *Scott,* 436 U.S. at 141-42; *See also United States v. Bynum*, 485 F.2d 490, 501 (2d Cir. 1973) (in large scale drug conspiracy case, conversations under two minutes "would be too brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation as merely social or possibly tainted"), *vacated and remanded on other grounds,* 417 U.S. 903 (1974).

In the instant case, the Intercept Orders, as challenged by Moving Defendants, with the exception of Intercept Order No. 04-MISC.CR-22 for Defendant Frederick Nolley's pager, effective February 20, 2004 through March 22, 2004, required that all intercepted communications be terminated immediately upon determining that the subject matter of the conversation was unrelated to communications subject to interception under 18 U.S.C. § 2518(5).  Intercept Order No. 04-MISC.CR-15 (2/11/04-3/12/04) at 8; Intercept Order No. 04-MISC.CR-15 (1st Extension; 3/12/04-4/11/04) at 8; Intercept Order No. 04-MISC.CR-15 (2nd Extension; 4/21/04-5/20/04) at 8-9; Intercept Order No. 04-MISC.CR-27 (3/2/04-3/31/04) at 7-8; Intercept Order No. 04-MISC.CR-27 (1st Extension; 4/2/04-4/30/04) at 8; Intercept Order No. 04-MISC.CR-55 (4/12/04-

41

5/12/04) at 8-9; Intercept Order No. 04-MISC.CR-55 (1st Extension; 5/21/04-6/19/04) at

8-9; Intercept Order No. 04-MISC.CR-55 (2nd Extension; 7/2/04-7/31/04) at 8; Intercept

Order No. 04-MISC.CR-44 (3/26/04-4/16/04) at 8; Intercept Order No. 04-MISC.CR-75

(5/7/04-6/7/04) at 8-9; Intercept Order No. 04-MISC.CR-81 (5/28/04-6/26/04) at 8-9;

Intercept Order No. 04-MISC.CR-81 (7/12/04-8/2/04) at 8-9.  Interception was also to

be terminated whenever it was determined through voice identification, physical

surveillance or otherwise that none of the authorized interceptees, when identified, were

participants in the conversation unless the conversation was criminal in nature.  *Id.*

Monitoring agents were directed to "spot check" minimized conversations to ensure the

conversation had not turned to criminal matters.  *Id.*

The court's review of the ten-day reports for the target phones subject to the

Intercept Orders, prepared in connection with the execution of the Intercept Orders

covering the challenged surveillance, submitted by the Government for the target

telephone numbers, demonstrates proper minimization efforts by the agents

responsible for executing the orders.  *E.g.*, 1st Ten-Day Report re: 04-MISC.CR-15

prepared by DEA Agent Mark T. Peterson, which enumerates the total calls intercepted

and minimized, as well as those considered pertinent, incomplete, under two minutes,

received by an answering machine or pager, or not monitored.  Such opportunity for

judicial supervision "provides strong support for the government's claim that the

minimization requirement has been satisfied."  *United States v. Hennings*, 1997 WL

714250 * 11 (W.D.N.Y. 1997) (weekly reports provided to Judge Arcara for review

supported proper minimization efforts).

In *United States v. Falsetti,* 721 F. Supp. 452 (W.D.N.Y. 1988), the court found

that investigators were entitled to "broader surveillance than otherwise would have been

appropriate, particularly during the earlier stages of the investigation" in a case where

there was "a relatively large drug-distribution ring that utilized coded phone

conversations, had sources in Arizona and Mexico, and may have included corrupt

federal and state officials."  *Falsetti, supra,* at 457 (W.D.N.Y. 1988) (citing *People v.

Floyd*, 360 N.E.2d 935 (N.Y. 1976)).  Here, as in *Falsetti,* a relatively large drug-

distribution ring is suspected of intra and interstate narcotics trafficking.  Government's

Response at 4-7.  Further, DEA agents who submitted affidavits in support of the

Intercept Orders indicated they believed the group used coded phone conversations

and that the alleged conspiracy may, as was the case in *Falsetti, supra*, involve a

corrupt Buffalo police officer.  Government's Response at 13.

Even if the investigating agents failed to use reasonable efforts to minimize

particular intercepted communications as Defendants claim, suppression of all

communications intercepted pursuant to any of the challenged Intercept Orders is not

the proper remedy absent a "pervasive disregard of the minimization requirement."

*United States v. Cirillo,* 499 F.2d 872, 881 n.7 (2d Cir.), *cert. denied,* 419 U.S. 1056

(1974); *United States v. McGuinness*, 764 F.Supp. 888, 900 (S.D.N.Y. 1991) (holding

exclusion of all evidence obtained through electronic intercept order because of

inclusion of some irrelevant conversations, even if irrelevant conversations were

listened to in their entirety, is not necessary provided investigating law enforcement

officers make good faith effort to achieve minimization).  Rather, suppression of all

evidence obtained under an Title III intercept order is warranted only when, at a

minimum, "a substantial number of non-pertinent conversations ha[ve] been intercepted unreasonably." [18] *Cirillo*, 499 F.2d at 881 (affirming district court's denial of defendant's suppression motion based on failure to minimize, without holding full adversary-type hearing, in the absence of evidence that substantial number of non-pertinent conversations had been intercepted unreasonably).   Contrary to Defendants' assertions, the record in this case fails to demonstrate any such pervasive disregard of the minimization requirement and Defendants point to nothing to indicate otherwise.

   The court finds that based upon the foregoing analysis, the investigators' affidavits satisfies the Government's burden under § 2518(5) and is "strongly supportive of the claim that the minimization requirement has been satisfied." *Falsetti, supra*, at 458.   In contrast, Defendants have failed to point to any examples in this case that, based on the record, they claim demonstrate a material failure to minimize.   As such, there has been no showing that the Government's efforts at minimization were sufficiently unreasonable thereby warranting suppression.   *United States v. Badalamenti*, 1985 WL 2572, *7 (S.D.N.Y. 1985) (mere fact that wiretap is conducted does not justify minimization hearing "where no colorable issue has been raised by the papers"), *cert. denied*, 495 U.S. 933 (1990).   In the absence of any evidence that a substantial number of non-pertinent calls were intercepted unreasonably, no minimization hearing is necessary.   *Cirillo, supra*, at 881.   The Government has therefore satisfied its burden to establish compliance with 18 U.S.C. § 2518(5)'s minimization requirements, while Moving Defendants have failed to meet theirs.

---

[18] Bracketed material added.

Defendants' motions to suppress on this ground, therefore, should be DENIED.

            Defendant Adams also moves to suppress based on Agent Laskowski's failure to record a conversation between Adams and Defendant Richardson.  LaTona Affidavit ¶¶ 77-82.  Adams asserts that Agent Laskowski indicated in one of the surveillance logs "DID NOT RECORD.  RL.," referencing a call placed from Richardson's telephone number (716-578-2781) to Adams.  *Id.*¶ 77.  Adams argues that 18 U.S.C. § 2518(8)(a) requires the contents of all intercepted communications "be recorded," and thus, based on Laskowski's asserted failure to do so as regards Adams's specific conversation with Richardson, such failure necessitates the suppression of all intercepted communications involving Adams. *Id.* ¶¶ 78-82. The court does not agree.  "[A] failure to record, though admittedly a violation of the statute, does not lead to suppression and reversal of the convictions."  *United States v. Amanuel*, 2005 WL 3200139 * 4-5 (W.D.N.Y. 2005) (quoting *United States v. Clerkley*, 556 F.2d 709, 719 (4th Cir. 1977), *cert. denied*, 436 U.S. 930 (1978)).

        Significantly, Adams does not allege that any intercepted incriminating conversations involving him were recorded out of context.  Nor has Adams established that he has been prejudiced by Agent Laskowski's failure to record in this one instance. Under these circumstances, where the minimization requirement has been substantially satisfied by the Government and the failure to record a single conversation constitutes a *de minimus* administrative error measured against the significant number of conversations properly monitored and recorded in this case, suppression for violation of § 2518(5) is not required.  *United States v. DePalma,* 461 F. Supp. 800, 824 (S.D.N.Y. 1978) ("Even assuming that out of eleven thousand intercepts, the four conversations

were monitored but not recorded by a means unexplained in the testimony, this court cannot find that such instances were more than *de minimus* transgressions of the statute which would not result in suppression."); *United States v. Jenkins*, 758 F. Supp. 1194, 1195 (W.D.Ky. 1990) (citing *United States v. Daly*, 535 F.2d 434, 442-43 (8th Cir.1976) (where one of seven agents listened to all intercepted communications and recorded only those he deemed incriminating, the court held the violation was *de minimus* and the minimization requirement was met since that agent "monitored less than 10% of the conversations involved.")).  As the Supreme Court has stated, "[n]ot every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez*, 416 U.S. 562, 574-75 (1974).  Adams's motion to suppress on this ground should therefore be DENIED.

## II.     Request for a *Franks* Hearing

Defendants Adams and Richard Mullen move for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) asserting that (1) the eavesdrop applications for the Intercept Orders should have informed, but failed to do so, the issuing court of any written documentation describing agreements made between confidential sources, relied upon on the applications, and law enforcement agencies so the court could better assess the credibility of the sources; (2) Agent Kasprzyk's opinion that Richardson was packaging cocaine at 928 Humboldt Parkway was unsupported by facts and was a deliberate attempt by Agent Kasprzyk to mislead the magistrate judge into issuing a search warrant for Richardson's home; (3) no physical surveillance established Adams

was present at 928 Humboldt Parkway; and (4) the judge should have determined the reliability of the information contained in the affidavits supporting the wiretap orders. LaTona Affidavit ¶¶ 61-62, 94-96; Eoannou Affirmation ¶ 97.

_____Under *Franks*, evidence obtained pursuant to a warrant based on materially false and misleading information is not admissible absent a hearing at which it is determined whether, setting aside the false statements, sufficient independent evidence was presented to the judicial officer such that the warrant was, notwithstanding the tainted information, issued on probable cause. *Franks, supra,* at 155-56. Moreover, before a defendant is entitled to a hearing to test the truthfulness of a warrant's underlying affidavits, the "defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)), *cert. denied,* 525 U.S. 1112 (1999). Additionally, a hearing is not required where an affidavit in support of a search warrant application contains material allegedly presented with "deliberate falsity or reckless disregard" for the truth if "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks, supra*, at 171-72; *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841 (1985). As relevant here, *Franks* has been limited to the statements contained in the affidavit based on the investigator's personal knowledge and does not extend to the information an informant may have provided to

the applicant.  *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995), *cert. denied*, 519 U.S. 1187 (1996).

In this case, neither Adams nor Mullen has made a "substantial preliminary showing" that the asserted omissions, if true, were material to the probable cause finding upon which the eavesdropping warrants were based.  Nor, significantly, has either Defendant made a "substantial preliminary showing" that Agent Kasprzyk, or any other affiant in this case, knowingly and recklessly made false statements in their applications for the eavesdropping warrants such that there could be no reasonable belief that the warrants were issued with probable cause.  Accordingly, Adams's and Mullen's requests for a *Franks* hearing are DENIED.


### III.    Request for a Taint Hearing

Defendants Adams, Cooper, Ayanna Nolley, Drake, Palmer, Sanger and Terry Mullen request the court to conduct a "taint" hearing to ascertain the full effect of the asserted illegal electronic surveillance on the Government's expected evidence at trial in this case, suppressing any resulting evidence obtained by exploiting an initial illegality on the part of the Government during the underlying investigation in this case.  The Government maintains that no taint hearing is necessary as Defendants have failed to establish any illegality in the electronic surveillance at issue.  Government's Response at 50-51.

Where a defendant seeks a "taint" hearing, the question presented is whether the evidence to which objection is made has been obtained by the exploitation of illegal government conduct, or by sufficiently different or distinguishable means so as to be

"purged," of any initial illegality.  *See Brown v. Illinois*, 422 U.S. 590, 597-99 (1975);

*Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).  The proponent of a taint

hearing has the initial burden of "producing specific evidence demonstrating taint in a

substantial portion of the Government's case against him."  *United States v. Sapere*,

531 F.2d 63, 66 (2d Cir. 1976); *see also Alderman v. United States*, 394 U.S. 165, 183

(1969).

_____In this case, the court has found that the Intercept Orders at issue were issued

with probable cause, upon a proper showing of necessity, the orders were not

improperly executed, and were properly minimized.  *Discussion, supra,* at 21-29, 32-39,

39-46.  Defendants have thus failed to demonstrate any primary illegality with respect to

any of the Intercept Orders, no other potential illegality is alleged by Defendants, and

their request for a taint hearing should therefore be DENIED.


**IV.    Suppression of Evidence Obtained From Search Warrants**

_____Defendants Richard Mullen, Terry Mullen, Palmer, Adams, and Stranc  all

challenge evidence obtained from search warrants issued in this case. [19]  The court

addresses Defendants' challenges as follows:

---

[19] As noted, Defendant Stranc entered a guilty plea on December 19, 2005, and his motion is
therefore deemed withdrawn.  (Docket Item No. 285).

### A.   Defendant Richard Mullen's challenge to evidence obtained pursuant to the search warrants executed on August 2, 2004 at his residence, place of business and for his 1998 Ford Expedition[20]

_____Defendant Richard Mullen argues that evidence obtained pursuant to the warrants for his residence at 90 Sussex Place in Buffalo, New York, for his place of business at 1202 E. Delevan Avenue in Buffalo, and for his 1998 Ford Expedition, which was searched in Henrietta, New York, must be suppressed.  Eaonnou Affirmation ¶¶ 98-108; Supplemental Response to Government's Response to Defendants' Omnibus Motions ¶ 1 ("Government's Supplemental Response") (Docket Item No. 328). Specifically, Mullen contends that (1) the affidavit supporting the search warrants contains information which is the fruit of an illegal search (the Intercept Orders directed to Mullen), and that (2) Agent Kasprzyk's allegations in his affidavit in support of the challenged search warrants, dated August 2, 2004, do not constitute probable cause. Eoannou Affidavit ¶¶ 98-101.  For example, Mullen contends that his asserted use of the Ford Expedition is insufficient to demonstrate probable cause to secure the vehicle. Eoannou Affidavit ¶ 107.  The Government argues that Agent Kasprzyk's affidavit supports a finding of probable cause for each search warrant and that Kasprzyk specifically informed the issuing magistrate judge that the Defendant was charged with numerous drug trafficking offenses in a sealed Indictment.  Government Response at 51.  The Government further contends that the Indictment constitutes "*prima facie* proof of the existence of probable cause that defendant had committed the crimes charged

---

[20]   The initial Indictment upon which the arrest and search warrants were based was filed on July 29, 2004, and alleged the conspiracy was in existence from September 2001 to the date the Indictment was returned, Doc. No. 1 at 2; the Second Superseding Indictment filed April 28, 2005 alleged the conspiracy existed until August 3, 2004.  Doc. No. 116 at 3.

therein," that Kasprzyk's affidavit was the result of a 20-month investigation and 13 Title III electronic surveillance orders. *Id.* at 53. The Government does not specifically address Mullen's contention that the search warrant for his vehicle, the Ford Expedition, was without probable cause.

The Government also acknowledges that Agent Kasprzyk admitted he had "no specific information" connecting the drugs to Richard Mullen's residence at 90 Sussex in Buffalo, New York in his affidavit. Government Response at 54. However, the Government submits that "after admitting he had no specific information that the drugs were being stored at defendant's residence, . . . [Agent Kasprzyk] sought a so-called "books and records" search warrant" for these locations, relying on *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) where the court determined an agent's expert opinion that drug traffickers typically keep material related to the conspiracy in their homes is a factor contributing to good faith. Government Response at 54. Finally, the Government, referring to Kasprzyk Affidavit ¶ 106(h),  maintains that Mullen failed to demonstrate that Agent Kasprzyk made any "deliberately false" statements or that the Agent demonstrated a "reckless disregard for the truth" to warrant a *Franks* hearing. *Id.*

As stated, Agent Kasprzyk admitted he had "no specific information" connecting the drugs to Mullen's residence in his affidavit. Agent Kasprzyk Affidavit ¶ 106. In his affidavit, however, Kasprzyk further explains that based on his experience and participation in narcotics investigations, dealers involved in narcotics trafficking, such as those who deal in quantities of cocaine and heroin, frequently maintain at their residences or places of business, or other secure premises to which they have access, cocaine, heroin, and currency to finance their business, as well as books, records,

receipts, names and addresses of associates, and other papers relative to their

narcotics distribution organization, firearms, ammunition, and paraphernalia for

packaging, diluting, cutting, weighing, processing and distributing narcotics.  *Id.* ¶

106(a)-(g).  As such, Agent Kasprzyk requested a so-called "books and records" search

warrant for Mullen's residence. ¶ 106(h); Government Response at 54.  Specifically, in

his affidavit, Kasprzyk relied upon the opinion in *United States v. Fama, supra,* which

states

> While probable cause to arrest does not necessarily give
> rise to probable cause to search . . . [the affiant] had stated
> in the affidavit that his ten [sic] year experience as a DEA
> agent had taught him the major drug traffickers frequently
> maintain at their homes large amounts of cash, drugs,
> books, ledgers, and other documents evidencing their
> criminal activities.  A number of cases have ruled that an
> agent's expert opinion is an important factor to be
> considered by the Judge reviewing a warrant application. ***
> Thus it should also be a factor contributing to objective good
> faith. [21]

*United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (internal citations omitted); *Id.*

¶ 106(h) .

Based on the holding in *Fama, supra,* that an agent's expert opinion that drug

traffickers typically maintain "large amounts of cash, drugs, books, ledgers, and other

documents evidencing their criminal activities . . . should be considered a factor

contributing to objective good faith," and because the challenged search warrant

authorized the executing agents to search not only for quantities of cocaine, but also for

"books, notes, ledgers, and other documents and records which is evidence, fruits and

instrumentalities of the manufacture and distribution of cocaine" at Mullen's residence,

---

[21]  Bracketed material added.

place of business ("Rich-Po Enterprises") at 1202 E. Delavan Avenue, Buffalo, New

York, the court finds the absence of any specific information connecting suspected

drugs to Mullen's residence at 90 Sussex in Buffalo, New York, or Mullen's place of

business, in the agent's supporting affidavit does not invalidate the search warrant.

*See Fama,* 758 F.2d at 838.  This judicial officer thus properly inferred, relying on

Kaspyzyk's experience as stated in the affidavit, that based on Mullen's status as a

leader of the large-scale and on-going narcotics conspiracy, as charged by the

Indictment, Mullen's residence would yield evidence of narcotics trafficking.   *Fama,* 758

F.2d at 838 (court considered opinion of agent employed by the DEA for 10 years that

"major drug traffickers frequently maintain at their homes large amounts of cash, drugs,

books, ledgers and other documents evidencing their criminal activities" a factor

contributing to "objective good faith")*; United States v. Dillon,* 810 F. Supp. 57, 62

(W.D.N.Y. 1992) (court found evidence uncovered by canine sniff in Buffalo airport and

magistrate judge's reliance on Buffalo police officer's six-year experience as a DEA

agent reasonable to support probable cause determination underlying warrant

application for Defendant's residence).  As *Fama* supports issuance of the search

warrant directed to a narcotics trafficker's home, Mullen's motion directed to the search

of his residence must fail.

  Irrespective of the fact that Agent Kasprzyk also candidly admitted that

information did not indicate that narcotics or other related contraband and evidence

were located at Mullen's business or in his vehicle, given that the investigation revealed

Mullen's narcotics distribution ring remained in operation when the warrants were

obtained, it was a reasonable and common sense inference to believe that as the

conspiracy's leader, Mullen's business and auto, like Mullen's residence, would also contain such evidence.  It was therefore not illogical or unreasonable for the issuing magistrate judge to infer that such evidence of the charged offenses would be located in either Mullen's residence or business establishment, which investigators believed was a front for the conspiracy, or Mullen's vehicle which investigators knew Mullen relied on for transportation.  According to the initial Indictment, filed July 27, 2004, the Grand Jury found Mullen's drug conspiracy was in operation up to that date, the day the warrants were issued.  Doc. No. 1 at 2.

Accordingly, the absence of any specific information more conclusively suggesting that contraband or evidence of Mullen's narcotics trafficking was located at Mullen's E. Delevan place of "business" or his vehicle, as of August 2, 2004 the date the warrants were issued based on the first Indictment, does not require suppression. *United States v. Gaskin,* 364 F.3d 438, 456-57 (2d Cir. 2004) (Fourth Amendment's requirement of a "fair probability" that evidence of crime exists necessary to support issuance of a warrant may be established based on experience and evaluation of facts by trained police officer), *cert. denied,* 125 S.Ct. 1878 (2005).  It was reasonable to infer that if the conspiracy was, according to the Grand Jury, in operating as to July 27, 2004, evidence of such operation fact would continue to be in Mullen's possession as of August 2, 2004.

As discussed, *Discussion, supra,* at 21-29, 32-39, 39-46, the court has found that the Intercept Orders were properly issued.  This determination thus extinguishes Mullen's contention that because the affidavit by Agent Kasprzyk, supporting the search warrants, contains information from the wiretaps which Defendant argues is the fruit of

54

an illegal search, suppression of all search warrants relying on such information is required.  Eoannou Affirmation ¶¶ 100, 102-104.

As noted, the Supreme Court has established the "totality of the circumstances" test for the determination of probable cause under the Fourth Amendment with regard to a search warrant.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id*.  Further, resolution of marginal cases should be determined by the preference afforded to warrants. *United States v. Smith,* 9 F.3d 1007, 1012 (2d. Cir. 1993).

A 162-page affidavit provided by Special Agent Kasprzyk ("Kasprzyk Affidavit") which included the incriminating communications intercepted pursuant to the Intercept Orders was submitted in support of the search warrants challenged by Mullen.  The Kasprzyk affidavit, which is based, in part, on information provided by Frederick Nolley and the informants CS-1, CS-2, CS-3, and CS-4, provides numerous details of the charged narcotics trafficking conspiracy.  Kasprzyk Affidavit ¶¶ 4-43.  The court thus finds that, under the totality of the circumstances standard enunciated by *Gates*, *supra,* the warrants issued against Mullen were based upon probable cause. As discussed, *supra,* pursuant to the *Fama* case, a reasonable nexus between the narcotics conspiracy, as charged in the Indictment, and Mullen's residence was also established.  Further, a trained and experienced narcotics investigator's evaluation of the facts of the instant investigation, particularly in light of the initial indictment returned on July 24,

55

2004, established probable cause to search on August 2, 2004 Mullen's business

location and vehicle.  *Gaskin, supra.*  As such, Defendant Mullen's motion to suppress

on this ground should be DENIED.

**B.   Defendant Palmer's challenge to evidence obtained pursuant to the search warrant executed for 475 Shirley Avenue**

Defendant Palmer argues that there is no substantial basis to believe the

evidence sought from 475 Shirley Avenue would be found there when the premises

were finally searched because, as Palmer argues, the search warrant was based on

intercepted conversations which occurred more than four months earlier, and therefore

the information was too stale to support the requested search warrant.  Palmer Motion

¶¶ 18-25.

As discussed, Discussion, *supra,* at 50-51, in connection with Mullen's attack on

the search warrant for his residence, the warrants sought in this case authorized the

executing agents to search for "books and records" in addition to cocaine and narcotics

and were properly issued pursuant to *Fama, supra.*  In *United States v. Feola, supra,*

the court held that search warrants issued for "books and records" of a criminal

enterprise "remain fresh for probable cause purposes for years."  *Feola*, 651 F. Supp. at

1090-91.  Also, "when the supporting facts 'present a picture of continuing conduct or

an ongoing activity, . . . the passage of time between the last described act and the

presentation of the application becomes less significant.'" *United States v. Ortiz*, 143

F.3d 728, 732 (2d Cir.) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.

1981), *cert. denied*, 458 U.S. 1110 (1982)), *cert. denied*, 525 U.S. 910 (1998).  "Indeed,

narcotics conspiracies are the very paradigm of the continuing enterprises for which the

court have relaxed the temporal requirements of non-staleness." *Ortiz, supra*, at 733 (internal quotation omitted).  Informants' statements given two years before the issuance of a wiretap warrant in a narcotics conspiracy have withstood a staleness challenge given the likely continuous nature of the conspiracy.  *Rowell, supra*, at 903.

In the instant case, the information derived from evidence obtained through the electronic Intercept Orders pertinent to Defendant Palmer was approximately four months old when presented by Agent Kasprzyk in support of the search warrant. Palmer Motion ¶¶ 18-25.  The court finds such information was temporally probative of the alleged conspiracy, and was significantly more current than the information supporting the wiretap warrant sustained in *Rowell, supra.*  Accordingly, Palmer's motion to suppress on this ground should be DENIED.

**C.**     **Defendant Adams's challenge to evidence obtained pursuant to the search warrant executed for 928 Humboldt Parkway, Upper**

Defendant Adams contends that the application for the warrant to search 928 Humboldt Parkway, upper, does not "reflect any factual allegations which reflect why the confidential informants were reliable."  LaTona Affidavit ¶ 87.  Further, Adams argues that the application fails to state whether any physical surveillance of the property was conducted or whether "any informant or data indicated that any contraband was at the premises." *Id.*  Finally, Adams alleges the information from the conversations intercepted on February 24, 2004, April 8, 2004 and May 9, 2004, do not provide probable cause to believe contraband would be located on the premises, and further, that the conversations were stale by August 2, 2004, the date the search

warrant was executed.  LaTona Affidavit ¶¶ 87-91.  Defendant Adams offers no
authority in support of this latter contention.

Contrary to Adams's contention, the court, in addressing Defendant Palmer's
motion to suppress based upon a defective search warrant, *Discussion, supra,* at 56-
57, has determined that the information derived from evidence obtained through
electronic intercept orders that is less than two years old when applying for a search
warrant which concerns a large-scale narcotics conspiracy, like the instant case, is not
stale.   As such, Defendant Adams's motion to suppress on this ground should be
DENIED.

Notwithstanding the staleness issue, Adams also alleges that the application for
the warrant to search 928 Humboldt Parkway, upper, Adams's residence, does not
provide a basis upon which the reliability of the confidential informants may be
determined and fails to state whether any surveillance of the property was conducted.
LaTona Affidavit ¶ 87.  A plain reading of Agent Kasprzyk's affidavit in support of the
search warrant demonstrates the contrary.

In his affidavit, Agent Kasprzyk states that information received from Nolley, CS-
1, CS-3 and CS-4 has been reliable and accurate because it was "corroborated by
independent sources of information" where possible, and because these informants
have made numerous admissions against penal interest in providing this information.
Kasprzyk Affidavit ¶¶ 4, 15, 34, 38. Moreover, despite any questions going to the
reliability of CS-2, the information upon which the DEA investigators based their
determination that Adams resided at 928 Humboldt Parkway, upper, was based on a
combination of facts, including "wire intercepts, telephone subscriber records, utility

checks, information from confidential informants and physical surveillance." Kasprzyk Affidavit ¶ 69.  Therefore, even if these confidential informants were proven to be unreliable, it would not necessarily defeat a finding of probable cause regarding Adams's residence that was based on a combination of facts, as is the case here. Thus, Adams's motion to suppress on this ground should be DENIED.

Finally, Adams claims that no informant or data indicated contraband was at Adams's residence.  LaTona Affidavit ¶ 87. As stated, Discussion, *supra,* at 51, Agent Kasprzyk acknowledged in his affidavit that he had "no specific information" connecting the drugs to the residences described in the warrant applications.  Kasprzyk Affidavit ¶ 106.  Notwithstanding, Agent Kasprzyk further explained that based on his experience and participation in narcotics investigation, dealers involved in narcotics trafficking typically keep narcotics and drug-related items where they reside relying on *United States v. Fama, supra*.  *Id.* ¶ 106(a)-(g).  The court has previously found the absence of informant information or data specifically indicating that contraband is presently at the premises is not determinative of the validity of the search warrant.  Discussion*, supra* at 53.  Instead, the agent's experience in investigating narcotics conspiracies is sufficient to establish probable cause for issuing a search warrant to seize a narcotics trafficker's books and records likely to be located at the trafficker's residence.  Kasprzyk Affidavit ¶ 106(h).  As such, the agent's reliance upon *Fama, supra,* was reasonable.  Therefore, any lack of evidence in the Agent's affidavit that contraband was actually at Adams's residence does not require suppression.

Accordingly, Defendant Adams's motion to suppress on this ground should be DENIED.

**D.     Defendant Terry Mullen's challenge to evidence obtained pursuant to the search warrant executed for 90 Sussex Street, Lower**

Defendant Terry Mullen contends that agents who searched the lower apartment at 90 Sussex Street in Buffalo, New York on August 3, 2004 did not represent they had a search warrant authorizing them to do so, but that if agents did possess a search warrant for the premises, it was not based upon probable cause, and failed to particularly describe the premises to be searched.  LaMendola Affidavit ¶¶ 44-48.  A careful review of Defendant's papers provides no support for these generalized contentions.  To the contrary, the record establishes that the agents did obtain a federal search warrant for the premises on August 2, 2004.  Government's Response, Exhibit 14.  Additionally, the warrant specifically identified the property to be seized in a Schedule of Items to be Seized, attached as an exhibit to the warrant application.  Kasprzyk Affidavit Exhibit B.  Among the items listed are controlled substances, such as cocaine, cocaine base and heroin, financial records relative to the purchase and distribution of narcotics, safe deposit box keys, paraphenalia for cutting, weighing and distributing narcotics, and indicia of ownership or occupancy of the premises to be searched.  *Id.*  Significantly, Terry Mullen does not allege that he made a request to examine the search warrant which was refused by the executing agents.  *See* Fed.R.Crim.P. 41(f)(3)(A) (executing officer must provide copy of the warrant and receipt of seized property to person whose property items were seized).  Even if the agents failed to provide Mullen with a copy of the warrant, failure to comply with these warrant execution requirements are ministerial violations and absent a showing of prejudice to the accused or the agent's deliberate disregard of rule, suppression is not an available remedy.  *United States v. Amendola*, 558 F.2d 1043, 1045 (2d Cir. 1977)

(citing cases) (decided under former Fed.R.Crim.P. 41(d)).  Mullen makes no attempt to demonstrate such prejudice or abusive conduct by the executing agents.  As such, the violations asserted by Mullen, if they occurred, are ministerial in nature, and do not warrant suppression.  In its discussion of challenges to particular search warrants interposed by other Defendants, the court has determined the search warrants were based upon probable cause, citing *Fama* as authority for the "books and records" portion of the warrant directed to Mullen's residence, and by finding several of the informants, including Frederick Nolley, to be reliable.  Discussion*, supra,* at 28, 50-59.

Accordingly, Defendant Terry Mullen's motion to suppress on this ground should be DENIED.

### E.    Evidence Obtained Pursuant to a Vehicle Stop and Subsequent Warrantless Search in Kansas in March, 2003

Defendants Richard Mullen and Stranc move to suppress evidence seized from the warrantless search of a rental vehicle Defendant Stranc was driving in Kansas on March 4, 2003.  The Government contends that Stranc is the only person with standing to challenge this search, and that the vehicle was properly stopped in Thomas County, Kansas, and that Stranc consented to the search.  Government's Response at 59-63. At oral argument on the instant motion, Mullen acknowledged he does not have standing to move to suppress evidence resulting from this vehicle stop.  Docket Item No. 252.  As such, the court DISMISSED Mullen's motion to suppress on this ground as moot.  Defendant Stranc pleaded guilty on December 16, 2005; accordingly, his motion is deemed withdrawn and the question of the search of Stranc's car in Kansas does not require adjudication.

## V.    Suppression of Defendants Funderburk's and Palmer's Statement

Defendants Funderburk and Palmer move to suppress statements they made to authorities after being arrested.  Specifically, Defendant Funderburk alleges that he may not have been advised of his *Miranda* rights when he made statements to the law enforcement agents on August 3, 2004 at his residence.  Funderburk Motion ¶¶ 5-6.  As such, Funderburk requests notice of intention from counsel to use such statements and a full description of the circumstances in which these statements were made. Additionally, Funderburk moves to suppress statements taken in violation of his Fifth Amendment rights, or requests a hearing in the alternative.  Defendant Palmer contends he gave a statement under duress which detailed his own drug activities but had no connection to the narcotics conspiracy at issue.  Specifically, Palmer alleges that Government agents threatened to arrest his wife, which would result in his children being placed in foster care.  Palmer Motion ¶ 26.  Accordingly, Palmer moves to suppress his statement and requests a hearing into the circumstances surrounding the taking of his statement. [22]  Palmer Motion ¶¶ 26-28.

The Government maintains that Palmer and Funderburk "were properly advised of the Miranda warnings and indicated that they understood those rights."  Government Response at 64.  The Government further asserts it was after they were advised of their rights that they made statements to police, but agrees that "an evidentiary hearing may be in order to establish the facts surrounding the arrests [sic] of each defendant and giving of statements that followed." *Id.*  Finally, the Government denies that police

---

[22] Palmer is scheduled to plead before the undersigned on March 9, 2006.  Docket Item No. 296. Should the plea not take place, the Government is directed to schedule further proceedings on Palmer's motion.

threatened Palmer's wife. *Id.*  An evidentiary hearing on Funderburk's motion was conducted before the undersigned on December 12 and December 19, 2005. Docket Item Nos. 284, 288.  A briefing schedule was established, and the court reserved decision.  A further Report and Recommendation directed to Funderburk's motion seeking suppression of his post-arrest statement will be submitted following the filing of the transcript of the hearing and the parties' briefs in accordance with such schedule. An evidentiary hearing on Palmer's motion is scheduled for March 9, 2006; however, as noted, Palmer is now scheduled to plead.  Accordingly, Palmer's motion is deemed conditionally withdrawn without prejudice, based on his anticipated plea.


## VI.    Motion to Dismiss Count 2 of the Indictment

Defendant Pressley moves to dismiss Count 2 of the Indictment against him. Specifically, Defendant Pressley contends that Count 2 of the Indictment must be dismissed for lack of sufficiency.  Pressley Motion at 3.  The Government opposes Defendant Pressley's motion, arguing "an indictment is no longer required to be technically perfect, and will not be dismissed if the defect within it does not prejudice the defendant," citing *Smith v. United States*, 360 U.S. 1, 9 (1959).  Government Response at 65.  The Government further contends that an indictment is valid if it offers "a plain, concise and definite written statement of the essential facts constituting the offense charged."  Government's Response at 65 (citing Fed.R.Crim.P. 7(c)(1)).

As noted, Defendant Pressley is charged in Count 2 with knowingly, willfully and unlawfully conspiring with others to possess, with intent to distribute, five kilograms or

more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) , 841 (b)(1)(A) and 21 U.S.C. §

846 ("§ 846").  The form of an indictment is governed by Fed.R.Crim.P. 7(c)(1) which

provides that "the indictment ... shall be a plain, concise, and definite written statement

of the essential facts constituting the offense charged."  *United States v. Macklin*, 927

F.2d 1272, 1276 (2d Cir.), *cert. denied,* 502 U.S. 847 (1991).  To satisfy this standard,

"[t]he facts alleged must be adequate to permit a defendant to plead former jeopardy

upon prosecution.  The indictment must also be sufficiently specific to enable the

defendant to prepare a defense."  *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir.

1982), *cert. denied*, 457 U.S. 1139 (1982).  These principles have been held to apply to

a conspiracy charged under 21 U.S.C. §846.  *Macklin, supra*, at 1276.  Further, the

Supreme Court has held that an indictment returned by a federal grand jury may not be

challenged on the ground that it is supported by inadequate or incompetent evidence.

*United States v. Williams*, 504 U.S. 36, 54 (1992).

       An indictment under §846 "need only allege the existence of a narcotics

conspiracy, a relevant time frame, and the statute alleged to be violated."  *Macklin,*

*supra (*citing *United States v. Bermudez,* 526 F.2d 89, 84 (2d Cir. 1975), *cert. denied*,

425 U.S. 970 (1976)).  Moreover, an indictment alleging a conspiracy under §846 need

not allege specific overt acts in furtherance of the conspiracy, as the conspiracy to

distribute narcotics is itself a specific crime.  *Bermudez, supra*, at 95.

       Here, the Indictment alleges that Defendants, including Defendant Pressley,

participated in the charged cocaine trafficking conspiracy between September 2001 and

on or about August 3, 2004, in violation of § 846 (Docket Item No. 116 at 3).

Accordingly, the Indictment sufficiently charges Pressley with participating in a narcotics

trafficking conspiracy.  Based on the foregoing, Defendant Pressley's motion to dismiss Count 2 of the Indictment should be DENIED.


**VII.    Hargrave's Motion to Dismiss the Indictment**

As stated in the Decision and Order issued contemporaneously with this Report and Recommendation ("Decision and Order"), Defendant Hargrave moved the court to review *in camera* minutes from the Grand Jury or to dismiss the Indictment, arguing that the testifying agent's reference in the affidavit in support of the Complaint to a conversation which allegedly took place between Defendants Richard Mullen and Hargrave on June 22, 2004 ("the 26-5 conversation") was taken out of context so as to have "deliberately distorted the true meaning of the words spoken to provide at least the semblance of probable cause."   Defendant Hargrave's Memorandum of Law at 2 (Docket Item No. 153) ("Hargrave Memorandum").  In the Decision and Order, the court determined it would not, as Hargrave requested, require an *in camera* inspection of the relevant Grand Jury testimony pertaining to the conversation at issue, because, even assuming the agent testified as posited by Hargrave, "where subsequent events merely cast doubt on the credibility of grand jury witnesses, due process does not require the prosecution to notify the grand jury of those events and seek a new indictment." *United States v. Guilette*, 547 F.2d 743, 753 (2d Cir. 1976), *cert. denied*, 434 U.S. 839 (1977). Decision and Order at 24.

For the purposes of the instant motion, the court considers it possible, assuming the agent in fact testified as Hargrave argues, that the agent failed in his testimony to describe the entirety of the 26-5 intercepted conversation, a supposition formed by

Hargrave after review of the pertinent wiretap transcript, showing the entirety of the 26-5 conversation.  However, the court also finds the face of such arguably incomplete, and thus potentially misleading, testimony to be a "subsequent event" within the holding of *Guilette*.  Importantly, Hargrave does not allege that the testifying agent committed perjury or that the Government condoned or relied on any intentional misrepresentation of the intercepted conversation by the agent in seeking the Indictment against Hargrave.  *See United States v. Boyd*, 336 F.3d 72, 77 (2d Cir. 2003) (presumption that an indictment is supported by probable cause can be rebutted by alleging it was obtained by "fraud, perjury, the suppression of evidence or other bad faith police conduct"); *United States v. Schwartz*, 464 F.2d 499, 511 (2d Cir.) ("As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed"), *cert. denied,* 409 U.S. 1009 (1972).

Absent any reason to believe the Government solicited or knowingly condoned perjured testimony by the agent in connection with the testimony at issue, there is no basis to dismiss the Indictment as to Hargrave.  In *Bank of Nova Scotia v. United States,* 487 U.S. 250 (1988), where IRS agents provided "misleading and inaccurate summaries" to the grand jury, the Supreme Court determined there was nevertheless insufficient grounds to dismiss the indictment as there was no evidence of prosecutorial misconduct as to such misleading and inaccurate evidence.  *Bank of Nova Scotia,* 487 U.S. at 260-61.  *See also United States v. Strouse*, 286 F.3d 767, 774-75 (2002) ("What the *Williams* Court's reliance on *Nova Scotia* makes clear, then, is that the misconduct that amounts to a violation of one of those few clear rules [justifying possible dismissal] . . . must involve government misconduct") (bracketed material

added).  Thus, standing alone, misleading testimony by a federal agent before a federal grand jury, does not warrant dismissal as a sanction.

As the court noted in the Decision and Order, even assuming, *arguendo*, that the agent misled the Grand Jury, as Hargrave implies, deliberately or inadvertently, into indicting Hargrave by presenting an incomplete portion of the 26-5 conversation as evidence of Hargrave's involvement in the Mullen narcotics conspiracy (which involvement may not arguably have been inferred if the Grand Jury had reviewed the entire 26-5 conversation), no evidence is submitted by Hargrave even suggesting the Government knew of the misleading nature of such testimony, or that the Government should have determined that the agent's assessment that the conversation related to drugs could not be based on his experience with narcotics trafficking conversations, but was instead a purposeful attempt to mislead the Grand Jury.[23]

Hargrave has therefore failed to support any finding that the Government was complicit in misconduct, including perjury or wilful misleading of the Grand Jury, sufficient to support dismissal.  Moreover, significantly, at oral argument, the Government represented that other evidence before the Grand Jury implicated Hargrave in the conspiracy as charged in Count 2 of the Indictment.  As such, Defendant Hargrave's motion to dismiss the Indictment should be DENIED.

---

[23]  As a result of voluntary discovery of the relevant Title III orders and related documents following arraignments on the initial Indictment and the Fed.R.Crim.P. 5 proceedings on the Complaint which named Hargrave, it is conceivable that the Government attorney could have become aware of the incomplete nature of the 26-5 conversation if presented to the Grand Jury as Hargrave has suggested and failed to take steps to obviate the potential prejudice to Hargrave prior to the return of the Superseding Indictment, adding Hargrave to the Conspiracy Count, in January 2005. However, Hargrave makes no such argument.

## VIII.   **Edmond's Motion to Dismiss the Indictment**

Defendant Edmond moves to dismiss the Indictment as against her.  Edmond

Attorney Affirmation ¶¶ 7-8.  Edmond claims her conversations do not appear on any

wiretap evidence, and that the only evidence the Government has against her is "the

fact that she apparently rented some vehicles for one or more of the co-defendants

[*e.g.*, Stranc] and she apparently took some trips with the lead defendant, Richard

Mullen."  *Id.* at 7 (bracketed material added).  The Government does not address this

issue.

It is well-established that the grand jury exists not to determine guilt or

innocence, but to assess whether there is an adequate basis for bringing a criminal

charge.  *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972).  As such, "[a]n indictment

returned by a legally constituted and unbiased grand jury, like an information drawn by

the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.

The Fifth Amendment requires nothing more."  *Costello v. United States*, 350 U.S. 359,

364 (1956) (declining to enforce the hearsay rule in grand jury proceedings as to do so

"would run counter to the whole history of the grand jury institution, in which laymen

conduct their inquiries unfettered by technical rules").  Moreover, "unsupported

suspicions of grand jury abuse by the prosecution did not justify disturbing the secrecy

of the grand jury's proceedings."  *United States v. Ullah*, 2005 WL 629487 * 14

(W.D.N.Y. 2005).

"A grand jury is neither an officer nor an agent of the United States, but a part of

the court."  *Falter v. United States*, 23 F.2d 420, 425 (2d Cir.), *cert. denied*, 277 U.S.

590 (1928).  Further, to ensure a grand jury's independence, a district court has limited

supervisory authority over the grand jury.  *United States v. Williams*, 504 U.S. 36, 46-47

68

(1992).  As a result, any power which a federal court may have over a grand jury is highly circumscribed, not "remotely comparable" to the power which state courts maintain over their own grand jury proceedings.  *Williams, supra,* at 50.  In *Williams,* the Supreme Court went beyond *Costello, supra,* holding that a challenge to the sufficiency of a federal grand jury's evidence, recast as a claim that the prosecutor's presentation was incomplete or misleading, is inadequate to require dismissal of an indictment.  *Williams, supra*, at 54.

Essentially, Defendant Edmond seeks to litigate her culpability, or lack thereof, on pretrial motion to dismiss the Indictment; however, such pretrial determinations may not be obtained in a federal criminal prosecution.  *See Costello, supra*.  Defendant Edmonds will have an opportunity at trial to test the evidence presented against her which allegedly links her to the conspiracy sufficient for a finding of guilty under Count 2.  As such, Defendant Edmonds' motion to dismiss the Indictment as against her should be DENIED.


**IX.**   **Motion to Exclude Post-Arrest Statements Made by Non-Testifying Co-Conspirators**

Defendants Pressley and Funderburk move to exclude from evidence any post-arrest statements made by non-testifying co-conspirators which would implicate either Defendant.  Funderburk's Motion at 3; Pressley's Motion at 17-18.  In support, Defendants rely upon *Bruton v. United States*, 391 U.S. 123 (1968), *appeal after remand,* 416 F.2d 310 (8th Cir. 1969)*, cert. denied*, 397 U.S. 1014 (1970), where the Supreme Court found that a non-testifying co-defendant's confession that was admitted at a joint criminal trial which "facially incriminated" the defendant violated the

defendant's Sixth Amendment right to confront adverse witnesses.  Funderburk's
Motion at 4; Pressley's Motion at 18.  The Government has not stated whether it plans
to introduce such statements at trial, nor has it provided such statements to the
Defendants.  Further, the Government has not in its Response or at Oral Argument,
specifically opposed Pressley's and Funderburk's motions to exclude, under *Bruton*,
post-arrest statements made by non-testifying co-conspirators.

"The Second Circuit has held that a defendant's Bruton rights [are] violated . . .
only if the statement, standing alone, would clearly inculpate him without introduction of
further independent evidence."  *Comfort v. Kelly*, 1998 WL 384613 (W.D.N.Y. 1998)
(internal quotation marks omitted) (quoting *United States v. Wilkinson*, 754 F.2d 1427,
1435 (2d Cir. 1985), *cert. denied*, 472 U.S. 1019 (1985)).  Further, the Supreme Court
in *Richardson v. Marsh*, 481 U.S. 200 (1987), refused to apply *Bruton* to a non-
testifying co-defendant's confession submitted with a proper limiting instruction by the
court so long as "the confession is redacted to eliminate not only the defendant's name,
but any reference to his or her existence."  *Richardson,* 481 U.S. at 211.  However,
where redacted confessions "facially incriminat[ed]" the defendant and "involve[d]
inferences that a jury ordinarily could make immediately, even were the confession the
very first item introduced at trial," the redacted confession violates a Defendant's Sixth
Amendment rights.  *United States v. Sanin,* 252 F.3d 79, 84 (2d Cir. 2001) (quoting
*Gray v. Maryland*, 523 U.S. 185, 197 (1998) (where government witness used the word
"deleted" in place of blank spaces and, after reading the confession to the jury,
informed them that he arrested defendant upon receipt of the co-defendant's
statement)), *cert. denied,* 534 U.S. 1008 (2001).

Based on the applicable caselaw, the absence of any indication that the

Government intends to use statements arguably subject to *Bruton* and absent a well-grounded proffer by Defendants that a nontestifying defendant's confession, if introduced, will be the sole inculpatory evidence offered against them, Defendants Pressley's and Funderburk's motions are DISMISSED without prejudice to renewal at trial should the Government attempt to introduce statements subject to *Bruton's* requirements.

**X.    Defendant Pressley's Motion to Exclude Testimonial Hearsay**

Defendant Pressley moves to exclude testimonial hearsay from evidence at trial, arguing that such evidence is barred by *Crawford v. Washington,* 541 U.S. 36 (2004) as violative of the Sixth Amendment.  Pressley Motion Part XIV.  Pressley contends testimonial hearsay which is barred includes hearsay from nontestifying "witness[es]," "target[s]," or "co-defendant[s]." [24]  Pressley Motion Part XIV.  The Government does not respond to Defendant Pressley's request.

In *Crawford*, the Supreme Court modified the holding in *Ohio v. Roberts*, 448 U.S. 56 (1980), which allowed hearsay evidence if it qualified as an exception to the hearsay rule or if it had "particularized guarantees of trustworthiness."  *Crawford v. Washington,* 541 U.S. 36, 60 (2004).  Instead, the Court established a bright-line rule that "prior testimonial statements . . .  are never admissible against a defendant unless he had an opportunity to cross-examine [the] declarant, regardless of whether the out-of-court statement falls within a firmly rooted hearsay exception or has particularized guarantees of trustworthiness." [25]  *Haymon v. New York,* 332 F. Supp.2d 550, 556

---

[24] Bracketed material added.

[25] Bracketed material added.

(W.D.N.Y. 2004) (citing *Crawford, supra,* at 40).  In *Crawford*, the Supreme Court did not specifically define the term "testimonial statement*." Id.* at 557.  However, the Court in *Crawford* identified as "testimonial" statements "prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations."  *Id.*; *see also Crawford, supra,* at 68.  Additionally, a declarant's "recorded statement, knowingly given in response to structured police questioning" will be considered testimonial.  *Haymon, supra,* at 557.

As neither the Government nor Pressley has proffered any statement the Government intends to use at trial which may be subject to *Crawford*, the court finds Pressley's motion premature.  Moreover, it cannot be disputed that incriminating statements made by co-conspirators in furtherance of the conspiracy, admissible as exceptions to the hearsay rule, are therefore not presently considered to be within the prohibition as "prior testimonial statements," to the extent established by *Crawford*. *Crawford, supra,* at 51; *Haymon* at 557.  Accordingly, Pressley's motion is DISMISSED without prejudice to renewal at or prior to trial before the District Judge should the Government attempt to introduce evidence subject to *Crawford*'s holding as part of its case-in-chief.

## CONCLUSION

Defendants' motions should be DENIED in part, and DISMISSED as moot in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 24, 2006
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      February 24, 2006
            Buffalo, New York