UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       v.

RICHARD MULLEN, a/k/a Carlos Watts,
FREDERICK NOLLEY,
EFRIM K. RICHARDSON, a/k/a Efram Richardson,
a/k/a Kevin Richardson,
MICHAEL STRANC,
ANDRE HALL, a/k/a Dre
DURRIAN PRESSLEY, a/k/a Devo,
YOLANDA WINDLEY,
LAWANDA D. EDMOND,
JOSEPH HARGRAVE,
EDWARD HEARST,
KEVIN WEEKS,
LARRY SANGER,
MAURE GRAHAM,
WILLIE MORRISON,
ROBERT ADAMS,
JOSEPH WILKIE,
JUSTIN PALMER,
DEBBIE DRAKE,
TERRANCE ASKEW,
AMEER MCKNIGHT,
DOUGLAS MCPEEK, a/k/a Jay McPeek
KWAINE DAVIS,
MARVIN WEST,
ROSS COOPER,
JEROME DAVIS,
AYANNA NOLLEY,
TERRY MULLEN,
CHRISTINA TURNER,
ROBIN GILMORE,
TIFFIANI JACKSON,
RAMONA WATSON,
HOWARD DEGREE,
KENYA LEE,
ERIC AMIDON
RONNIE FUNDERBURK,

                    Defendants.

**DECISION
and ORDER**

**04-CR-189A(F)**

APPEARANCES:        KATHLEEN M. MEHLTRETTER
ACTING UNITED STATES ATTORNEY
Attorney for the Government
MARY C. KANE, of Counsel
Federal Centre
138 Delaware Avenue
Buffalo, New York     14202

LEIGH E. ANDERSON, ESQ.
Attorney for Defendant Richard Mullen
69 Delaware Avenue
Suite 1001
Buffalo, New York   14202

LAW OFFICE OF DAVID J. SEEGER
Attorney for Defendant Richard Mullen
DAVID J. SEEGER, of Counsel
69 Delaware Avenue
Suite 1100
Buffalo, NEW YORK   14202

JOSEPH J. TERRANOVA, ESQ.
Attorney for Defendant Frederick Nolley
7350 Boston State Road
Hamburg, New York   14075

LOREN D. LOBBAN, ESQ.
Attorney for Defendant Efrim K. Richardson
The Bullard Lobban Law Group
69 Delaware Avenue
Suite 1104
Buffalo, New York   14202

SEAN DENNIS HILL, ESQ.
Attorney for Defendant Michael Stranc
Six North Pearl Street
Buffalo, New York   14202

COHEN & LOMBARDO, P.C.
Attorneys for Defendant Andre Hall
ROBERT N. CONVISSAR, of Counsel
343 Elmwood Avenue
PO Box 5204
Buffalo, New York     14213-5204

TERRY GRANGER, ESQ.
Attorney for Defendant Durrian Pressley
110 Pearl Street, Suite 200
Buffalo, New York    14202

MATTHEW P. PYNN, ESQ.
Attorney for Defendant Yolanda Windley
272 East Avenue
Lockport, New York   14094

JOSEPH MISTRETT
FEDERAL PUBLIC DEFENDER
Attorney for Defendant Lawanda D. Edmond
JOHN F. HUMANN, Assistant Federal Public Defender
300 Pearl Street, Suite 450
Buffalo, New York   14202

MARTIN L. SCHMUKLER, ESQ.
Attorney for Defendant Joseph Hargrave
41 Madison Avenue, Suite 5B
New York, New York    10010

ANNE E. ADAMS, ESQ.
Attorney for Defendant Edward Hearst
43 Court Street, Suite 700
Buffalo, New York   14202

ROBERT M. GOLDSTEIN, ESQ.
Attorney for Defendant Kevin Weeks
438 Main Street, Suite 225
Buffalo, New York    14202

NELSON S. TORRE, ESQ.
Attorney for Defendant Larry Sanger
1220 Liberty Building
424 Main Street
Buffalo, New York   14202

HORACE A. HUTSON, ESQ.
Attorney for Defendant Maure Graham
295 Main Street, Suite 468
Buffalo, New York    14203

JOHN K. JORDAN, ESQ.
Attorney for Defendant Willie Morrison
1580 Statler Towers
107 Delaware Avenue
Buffalo, New York 14202

JOHN K. JORDAN, ESQ.
Attorney for Defendant Willie Morrison
1580 Statler Towers
107 Delaware Avenue
Buffalo, New York 14202

JOSEPH M. LaTONA, ESQ.
Attorney for Defendant Robert Adams
716 Brisbane Building
Buffalo, New York    14203

ANGELO MUSITANO, ESQ.
Attorney for Defendant Joseph Wilkie
1520 Pine Avenue
P.O. Box 2127 NMS
Niagara Falls, New York    14301

LAW OFFICE OF J. GLENN DAVIS
Attorney for Defendant Justin Palmer
J. GLENN DAVIS, of Counsel
69 Delaware Avenue, Suite 1104
Buffalo, New York    14202

JUDITH M. KUBINIEC, ESQ.
Attorney for Defendant Debbie Drake
402 Amherst St.
Buffalo, New York   14207

CRAIG DEXTER HANNAH, ESQ.
Attorney for Defendant Terrance Askew
69 Delaware Avenue, Suite 711
Buffalo, New York   14202

ALAN S. HOFFMAN, ESQ.
Attorney for Defendant Ameer McKnight
460 Franklin Street
Buffalo, New York   14202

4

LABIN & BUFFOMANTE
Attorney for Defendant Douglas McPeek
RICHARD R. SHAW, II, of Counsel
531 Farber Lakes Dr.
Williamsville, New York    14221

HERBERT R. JOHNSTON, JR., ESQ.
Attorney for Defendant Kwaine Davis
118 Admiral Road
Buffalo, New York    14216

JOHN W. DORN, ESQ.
Attorney for Defendant Marvin West
One Town Centre, Suite 300
501 John James Audubon Parkway
Amherst, New York 14228

LAWRENCE J. DESIDERIO, ESQ.
Attorney for Defendant Ross Cooper
69 Delaware Avenue, Room 1000
Buffalo, New York   14202-3801

LoTEMPIO & BROWN
Attorneys for Defendant Jerome Davis
FRANK L. LoTEMPIO, JR. of Counsel
181 Franklin Street
Buffalo, New York    14202

ROSENTHAL, SIEGEL, MUENKEL & MALONEY, LLP
Attorneys for Defendant Ayanna Nolley
CHERYL MEYERS-BUTH, of Counsel
300 Main Street
Buffalo, New York    14202

LEE CHARLES LaMENDOLA, ESQ.
Attorney for Terry Mullen
70 Niagara Street, Suite 500
Buffalo, New York    14202

BURGETT & ROBBINS
Attorneys for Defendant Christina Turner
ROBERT A. LIEBERS, of Counsel
15 E. Fifth Street
PO Box 3090
Jamestown, New York    14702-3090

DAVID GERALD JAY, ESQ.
Attorney for Defendant Robin Gilmore
69 Delaware Avenue, Suite 1103
Buffalo, New York    14202

ALLAN P. McCARTY, ESQ.
Attorney for Defendant Tiffiani Jackson
7350 Boston State Road
Hamburg, New York    14075

KEVIN P. SHELBY, ESQ.
Attorney for Defendant Ramona Watson
5662 Main Street
Williamsville, New York    14221

JOHN J. MOLLOY, ESQ.
Attorney for Defendant Howard Degree
4268 Seneca Street
West Seneca, New York   14224

MICHAEL J. STACHOWSKI, ESQ.
Attorney for Defendant Kenya Lee
2025 Clinton St.
Buffalo, New York    14206

ANDREW C. LoTEMPIO, ESQ.
Attorney for Defendant Eric Amidon
1580 Statler Towers
Buffalo, New York    14202

LIPSITZ, GREEN, FAHRINGER, ROLL,
       SALISBURY & CAMBRIA,
Attorneys for Defendant Ronnie Funderburk
PAUL J. CAMBRIA, JR., of Counsel
42 Delaware Avenue, Suite 300
Buffalo, New York    14202

## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on

October 19, 2005 for all pretrial matters.  The matter is presently before the court for

6

determination of Defendants' pretrial motions.

## BACKGROUND AND FACTS [1]

Defendant Richard Mullen and six others, including co-defendants Frederick Nolley, Richardson, Edmond, Stranc, Pressley and Hall, were initially indicted in a five count indictment on July 29, 2004, charging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 843(b), 846, 848(a), and 18 U.S.C. § 2.  (Docket Item No. 1).  Specifically, Defendant Richard Mullen was charged in Count 1 of the Indictment with knowingly, willfully, intentionally and unlawfully engaging in a continuing criminal enterprise of which he allegedly organized, supervised, and managed, and from which he allegedly obtained substantial income and resources, in violation of 21 U.S.C. § 848 ("Count 1" or "the CCE Count").  Defendants Richard Mullen, Frederick Nolley, Richardson, Stranc, Hall, Pressley and Edmond were charged with conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of cocaine  in violation of 21 U.S.C. § 846 ("Count 2" or "the Conspiracy Count"); Defendants Richard Mullen, Frederick Nolley and Edmond are charged with knowingly, intentionally and unlawfully possessing with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. § 841 ("Count 3"); and Defendants Richard Mullen, Frederick Nolley, Stranc and Edmond were charged with knowingly, intentionally and unlawfully possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841 ("Count 4").   Defendant Hall was charged in Count 5 of the Indictment with knowingly, intentionally, and unlawfully possessing five grams or more of cocaine in violation of 21 U.S.C. § 841

---

[1] Taken from the pleadings and papers filed in this action.

("Count 5").

In a Superseding Indictment, filed January 20, 2005, Defendants Windley, Hargrave, Hearst, Weeks, Sanger, Graham, Morrison, Adams, Wilkie, Palmer, Drake, Askew, McKnight, Douglas McPeek, K. Davis, West, Cooper, J. Davis, Ayanna Nolley, Terry Mullen, Turner, Gilmore, Jackson, Watson, Degree, Lee, and Amidon were added as Defendants under the Conspiracy Count.  (Docket Item No. 52).[2]   A Second Superseding Indictment ("the Indictment"), filed on April 28, 2005, added Defendant Funderburk, to the Conspiracy Count.  (Docket Item No. 116).

By order dated February 4, 2005, June 1, 2005 was established as the deadline for filing all pretrial motions, both dispositive and non-dispositive.  (Docket Item No. 81) ("the Scheduling Order").    In accordance with the Scheduling Order, the following motions were filed:  Richard Mullen on June 1, 2005 (Docket Item No. 150) ("Eoannou Affirmation"), Frederick Nolley on July 1, 2005 (Docket Item No. 172) ("Terranova Affirmation"), Efrim Richardson on June 1, 2005 (Docket Item No. 145) ("Lobban Affidavit"), Durrian Pressley on June 1, 2005 (Docket Item No. 140) ("Pressley's Motion"), LaWanda Edmond on June 2, 2005 (Docket Item No. 154) ("Humann Affirmation"), Joseph Hargrave on June 2, 2005 (Docket Item No. 152) ("Schmukler Affirmation"), Larry Sanger on May 27, 2005 (Docket Item No. 130) ("Torre Affidavit"), Robert Adams on June 1, 2005 (Docket Item No. 142) ("LaTona Affidavit"), Justin Palmer on May 30, 2005 (Docket Item No. 132) ("Palmer Motion"), Debbie Drake on June 1, 2005 (Docket Item No. 151) ("Drake Motion"), Ross Cooper on June 1, 2005

---

[2]    These Defendants, along with six others, were originally charged by complaint filed August 2, 2004 with violations of 21 U.S.C. §§ 842(a)(1), 843(b), 846.  (Doc. No. 1).

(Docket Item No. 143) ("Desiderio Affirmation"), Ayanna Nolley on June 1, 2005 (Docket Item No. 138) ("Meyers-Buth Affidavit"), Ameer McKnight on May 31, 2005 (Docket Item No. 137) ("Hoffman Affidavit") and on June 1, 2005 (Docket Item No. 141) ("Hoffman Supplemental Affidavit"), Terry Mullen on June 30, 2005 (Docket Item No. 182) ("LaMendola Affidavit"), Kenya Lee on June 1, 2005 (Docket Item No. 139) ("Stachowski Affirmation"), Michael Stranc on June 1, 2005 (Docket Item No. 144) ("Stranc Motion"), and Ronnie Funderburk on July 15, 2005 (Docket Item No. 189) ("Funderburk's Motion") ("Moving Defendants").[3, 4, 5, 6, 7]   The Government's response was to be filed by August 31, 2005.

On August 30, 2005, the court granted the Government's request for an extension to file its response to Defendants' motions, not later than September 2, 2005.

---

[3] Defendant Stranc entered a guilty plea on December 16, 2005. (Docket Item No. 285).

[4] Included in these motions are requests for certain dispositive relief which are addressed in a Report and Recommendation filed contemporaneously with this Decision and Order.

[5] Although Defendants' motions request a variety of relief, most of Defendants' requests are generalized and only some Defendants provide substantive arguments in support of certain requests. Additionally, Defendants Richard Mullen, Adams, Frederick Nolley, Terry Mullen, Edmond, Hargrave, Pressley, Cooper, Lee, Palmer, Richardson, McKnight, and Funderburk request to join in motions made by their co-Defendants.  (Defendants Ayanna Nolley and McKnight make particular requests to join in their co-Defendants' motions regarding objections filed to the electronic surveillance conducted by the investigators.  McKnight also moves to join in his co-defendants' motions for discovery and a Bill of Particulars).  Accordingly, the court considers these Defendants as having requested the same relief insofar as each Defendant has standing to make such a request and the relief requested is sought by other Defendants.  References to motion papers of specific Defendants will be made only with regard to Defendants who provided substantive arguments in support of their respective requests.

[6] Defendants Andre Hall, Edward Hearst, Kevin Weeks, Maure Graham, Joseph Wilkie, Terrance Askew, Douglas McPeek, Kwaine Davis, Jerome Davis, Christina Turner, Tiffiani Jackson, Ramona Watson, Howard Degree and Eric Amidon filed no pretrial motions.

[7] Askew, West, Gilmore, Windley and Cooper were dismissed from the case on November 7, 2005, July 14, 2005, August 30, 2005, May 19, 2005 and January 24, 2006, respectively.  Accordingly, the court considers all pretrial motions filed by Defendant Cooper to be withdrawn.  Defendant Morrison, who had been a fugitive, was arraigned on January 10, 2006.

(Docket Item No. 216).  On September 2, 2005, the Government filed the Government's Response to Omnibus Motion in response to Defendants' motions.  ("Government's Response") (Docket Item No. 223).  Also before the court are motions by Defendants Richard Mullen, Funderburk, Edmond, Hargrave, Adams, Lee, Palmer, McKnight, Pressley, Graham and Drake at oral argument conducted on October 11, 2005 upon which the court reserved decision.  Minute Entry Docket Item No. 252 ("oral argument"). On February 13, 2006, in response to the court's request for clarification of the Government's Response, the Government filed a Supplemental Response to Government's Response to Defendant's Omnibus Motions.  (Doc. No. 328) ("Government's Supplemental Response").

Defendants' motions seek disclosure of *Brady*, *Giglio* and *Jencks* Act material, a Bill of Particulars and discovery, disclosure of informant information, severance, an audibility hearing, a hearing pursuant to *Franks v. Delaware*, disclosure of evidence pursuant to Fed. R. Evid. 404(b), 608 and 609, an *in camera* review of the Grand Jury minutes, transcripts of the intercepted telephone calls, and the Government's request for reciprocal recovery. [8, 9]

---

[8] Defendants' request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to test the truthfulness of the search warrants' underlying affidavits issued during the investigation, is further addressed in the Report and Recommendation issued by the court contemporaneously with this Decision and Order.  Report and Recommendation filed February 24, 2006 at 45-46.

[9] Defendants' pretrial motions include certain requests for dispositive relief which are addressed in a separate Report and Recommendation filed contemporaneously with this Decision and Order, specifically requests by Defendants Richard Mullen, Terry Mullen, Sanger, Drake, Ayanna Nolley, McKnight, Cooper, Lee, Funderburk and Adams to suppress evidence derived from electronic eavesdropping; by Defendants Richard Mullen and Adams for a *Franks* Hearing; by Defendants Adams, Cooper, Ayanna Nolley, Drake, Palmer, Sanger and Terry Mullen for a Taint Hearing; by Defendants Richard Mullen, Terry Mullen, Palmer, Cooper, Adams and Stranc to suppress evidence obtained from search warrants; by Defendants Richard Mullen and Stranc to suppress evidence obtained from the vehicle stop in Kansas in March 2003; by Defendants Funderburk and Palmer to suppress their post-

In their motion papers and at oral argument, Defendants requested the

Government to disclose, or that they be permitted to inspect, evidence subject to

disclosure under Fed.R.Crim.P. 16.  These requests include Defendant Richard

Mullen's requests at oral argument to amend the scheduling order governing filing of

pretrial motions, a request denied by the court on the record, to obtain copies of car

rental contracts, lease agreements pertaining to his New York City apartment, financial

records and credit card receipts, and a description of items seized from his vehicle or

person.  Moving Defendants request (1) examinations and tests conducted pursuant to

the investigation; (2) inspection of pen register applications; (3) transcripts or recordings

of phone calls intercepted implicating Defendant McKnight; (4) disclosure of expert

witnesses pursuant to Fed. R. Crim. P. 16(a)(1)(G); (5) notice of the Government's

intention to use Rule 16 evidence, pursuant to Rule 12(b)(4)(B); (6) statements of

Defendants, co-Defendants and co-conspirators (7) Grand Jury testimony; (8)

disclosure of hearsay evidence; (9) disclosure of identification procedures used in this

case; (10) disclosure of surveillance applications and any supporting documents; (11)

the names and addresses of the participants in the intercepted communications who

consented to interception; (12) minimization instructions issued to executing agencies

and sealing orders regarding the same; (13) the Government's and other law

enforcement agencies' documents related to the investigation; (14) summaries, logs of

intercepted conversations and related transcripts; (15) copies of physical evidence; (16)

---

arrest statements; by Defendants Hargrave and Edmond to dismiss the Indictment against them; by
Defendants Pressley and Funderburk to exclude post-arrest statements made by non-testifying co-
conspirators; and by Defendant Pressley to exclude testimonial hearsay.

third party documents relating to Moving Defendants; (17) tapes and photographs; (18)

Defendants' prior records; (19) documents and tangible objects, and (20) inspection of

items seized from Richard Mullen's vehicle or person during a traffic stop in Kansas.[10]

At oral argument, the court directed all counsel to address any remaining issues

pursuant to Fed.R.Crim.P. 16 ("Rule 16") not previously resolved in a prior court

proceeding or as a result of the extensive discovery voluntarily provided by the

Government.  Docket Item No. 252.  The discussion that follows concerns Rule 16

issues raised by Defendants at oral argument that were not resolved at that time and

upon which the court reserved decision.  Accordingly, all other Rule 16 issues raised in

Moving Defendants' motions, but not resolved by the court at oral argument, are

deemed moot, and DISMISSED as such.

At oral argument, the court found Richard Mullen's request regarding the

scheduling order to be untimely and without good cause, and accordingly, as noted,

the request was DENIED.  Docket Item No. 252.  The court also DISMISSED as moot

Mullen's request for car rental contracts, apartment lease agreements, financial records

and credit card receipts pertaining to Mullen, based on the Government's

representation on the record that it does not possess these items.  The Government

also represented that it does possess car rental agreements involving Defendant

---

[10] Mullen's request for inspection of items seized from a vehicle stop was made at oral argument, however, Mullen did not specify whether he was referring to the search of his vehicle on August 2, 2004 in Henrietta, New York pursuant to a search warrant issued by this court, or the stop of Defendant Stranc's vehicle in Kansas in March 2003, and any argument to support production of such items is absent from his moving papers.  The court, however, notes that the Government responded to Mullen's request by stating at oral argument that anything seized from Mullen's person or from his vehicle is available for inspection. Accordingly, the court considers Mullen's request as moot.

Edmond and other co-Defendants, such as Stranc, and agreed to provide copies of such documents to Edmond's and Mullen's attorneys. Accordingly, Edmond's and Mullen's request for copies of such agreements are DISMISSED as moot. *Id.* The court reserved decision on Moving Defendants' request for expert witness disclosure. The Government further represents it has supplied the records of examinations and tests as well as information regarding the seizure of drugs during the course of the investigation to all counsel, including Defendant Richard Mullen's prior counsel, Thomas Eoannou, Esq. [11] As such, Moving Defendants' motions for examinations and tests are DISMISSED as moot. Additionally, the Government agreed to provide copies of the pen register relating to the charges against Defendant Funderburk, and provide additional records of phone calls that may have been intercepted related to Defendant McKnight. Funderburk's pen register request and McKnight's request for telephone records are therefore also DISMISSED as moot.

Based on the following, Moving Defendants' remaining motions are GRANTED in part, DENIED in part, and DISMISSED as moot in part. The Government's motion for reciprocal discovery is GRANTED.

### DISCUSSION

**1.      Request for Bill of Particulars**

Defendant Richard Mullen requests, pursuant to Fed. R. Crim. P. 7(f) ("Rule 7(f)"), a Bill of Particulars seeking details as to his alleged violations of 21 U.S.C. §§

---

[11] At oral argument, Mullen's new attorney, David J. Seeger, did not represent that he had encountered difficulties in obtaining such information from Mullen's prior counsel, Mr. Eoannou.

841 and 846 in connection with the CCE and Conspiracy Count.  Eoannou Affirmation ¶¶ 4-5.  Specifically, Mullen seeks disclosure of the identity of the five or more individuals with whom he allegedly acted in concert, a description of his relationship to each of those individuals, the nature of the organizational, leadership, supervisory, or managerial actions or duties he allegedly undertook to further the alleged criminal enterprise, and the amount of income derived from these activities.  *Id.*  Under the Conspiracy Count, Mullen and the other Moving Defendants request particularization seeking details regarding their respective specific involvement in the alleged conspiracy.  Eoannou Affirmation ¶¶ 4-5; Terranova Affirmation E(14); Lobban Affidavit ¶ 12; Schmukler Affirmation ¶ 2(e); Torre Affidavit ¶ 32; Hoffman Supplemental Affidavit ¶ 5; LaTona Affidavit ¶¶ 5-10; Palmer Motion ¶ 11; Meyers-Buth Affidavit ¶ 34; LaMendola Affidavit ¶ 34; Stachowski Affirmation ¶¶ 4-5; Funderburk's Motion ¶¶ 13-20; Drake Motion Part VII; Pressley Motion Part I(2).

Defendants Sanger, Pressley and Drake seek particulars regarding their roles in the alleged conspiracy.  Specifically, Sanger requests that the Government disclose whether Sanger had actual or constructive possession of the alleged handgun in furtherance of drug trafficking.  Torre Affidavit ¶ 32.  Pressley asks that the Government describe the significance of September 2001 as the alleged date of the commencement of the conspiracy if the exact date is not known to the Grand Jury, and Drake seeks disclosure as to whether any narcotics were acquired by her or anyone else as a result of the alleged telephone conversations between herself and co-Defendant Richardson on or about April 3, 2004.  Pressley Motion Part I(2); Drake Motion Part VII.

Additionally, Defendants Richard Mullen and Lee request particularization as to

14

how each took part in the offenses alleged to have occurred on January 13, 2003, and on March 4, 2003. Eoannou Affirmation ¶¶ 4-5; Stachowski Affirmation ¶¶ 4-5.  Both Defendants request particulars as to whether the alleged possession was actual or constructive.  Eoannou Affirmation ¶ 5(j); Stachowski Affirmation ¶ 5(e).  Defendant Lee also seeks disclosure of how she took part in the offense alleged to have occurred on April 2, 2004.  Stachowski Affirmation ¶ 5(k).

Under Fed.R.Crim.P. 7(f), a court may direct the filing of a Bill of Particulars as justice requires.  A defendant may seek particularization to identify with sufficient particularity the nature of the charges against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy if he should be prosecuted a second time for the same offense.  *Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987); *United States v. Taylor*, 707 F.Supp. 696 (S.D.N.Y. 1989).  The decision as to whether to direct further particularization is within the discretion of the court.  *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

The test as to whether to order particularization is "whether the information sought is necessary, not whether it is useful."  *United States v. Matos-Peralata*, 691 F.Supp. 780, 791 (S.D.N.Y. 1988), *aff'd*, 920 F.2d 1080 (2d. Cir. 1990).  The court will not order particularization where the government has provided the information requested either "in the indictment or some acceptable alternative form."  *Bortnovsky, supra*, at 574; *United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y. 1987), (whether the information sought has been provided elsewhere, such as in other items

15

provided by discovery, responses made to unobjected requests for particulars, prior proceedings, and the indictment itself may be considered in deciding whether to order particularization)*, aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989). A Bill of Particulars should only be required "where the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."   *Feola*, *supra,* at 1132.  Further, "[a]cquisition of evidentiary detail is not the function of the bill of particulars."  *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (denying request for Bill of Particulars  identifying unindicted alleged co-conspirators referred to in indictment as 'known and unknown' on the basis that such information was unnecessary to advise defendants of the specific acts of which they were accused), *cert. denied*, 498 U.S. 906 (1990) .

An indictment need not allege an overt act in furtherance of the conspiracy if the indictment alleges a conspiracy to distribute drugs, and further alleges the time in which the conspiracy was operative and the statute that was allegedly violated.  *United States v. Hendrickson,* 26 F.3d 321, 337, n. 9 (2d Cir. 1994) (citing *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975)), *appeal after remand,* 104 F.3d 349 (2d Cir. 1996), *cert. denied,* 520 U.S. 1129 (1997); *United States v. Delvecchio,* 816 F.2d 859, 864 (2d Cir. 1987); *United States v. Macklin*, 1988 WL 118471 (W.D.N.Y. 1988).  A defendant does not "need" detailed evidence about the conspiracy in order to prepare for trial properly. *Feola, supra*, at 1132.  Additionally, as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a drug trafficking conspiracy charge.   *United States v.*

16

*Taylor*, 707 F.Supp. 696, 699 (S.D.N.Y. 1989).

Counts 1 through 5 of the Indictment charge Defendants with substantive crimes including violations of 21 U.S.C. § 848(a) (Count 1, the CCE count, against Defendant Richard Mullen), 21 U.S.C. § 846 (Count 2) and 21 U.S.C. § 841(a)(1) and (b)(1)(A) against Richard Mullen, Frederick Nolley, Jr., and Edmond (Count 3), Defendants Mullen, Nolley, Stranc, and Edmond (Count 4) and Defendant Andre Hall (Count 5) and 18 U.S.C. § 2 (Counts 3-5).  As noted, all Defendants are charged in Count 2 of the Indictment, the Conspiracy Count.  A fair reading of the Indictment as a whole provides sufficient detail of the substance of the charges regarding the dates and locale of the alleged conduct.  As such, the Indictment sufficiently informs each Moving Defendant of the nature of the charges against them to permit adequate trial preparation and avoidance of unfair surprise without formal particularization.

The court also finds that much of the information which Moving Defendants seek through particularization has been made available to Defendants during the detention hearings for Defendant Richard Mullen on August 5, 2004; Defendant Richardson on August 5, 2004; Defendant Hall on August 6, 2004; Defendant Stranc on August 10, 2004, continued on August 12, 2004; and Defendant McKnight on February 2, 2005. Additional information regarding the case was provided by the Government through extensive voluntary discovery, including copies of all applications, affidavits, and orders submitted in support of the various Title III interceptions of wire and electronic communications conducted in this case, copies of all the tapes of all the conversations recorded pursuant to the interceptions, copies of the "line sheets," or logs regarding these wire interceptions, copies of all search and arrest warrants, as well as the

17

applications and affidavits submitted to obtain the warrants, and various investigative reports from the DEA.  Where information sought by a defendant has been provided in some acceptable alternative form, such as pretrial proceedings, no Bill of Particulars is required.  *Bortnovsky*, *supra*, at 547.

To order particularization as Moving Defendants request would compel the Government to reveal its evidence or theory of prosecution beyond any arguable justification given the extensive voluntary discovery and other proceedings in this case. Therefore, Moving Defendants' motions for particularization are DENIED.

## 2.    Transcripts of Grand Jury Testimony

Defendants Funderburk and Pressley request transcripts of Grand Jury testimony of uncharged defendants or co-conspirators.  Defendant Hargrave requests an *in camera* inspection to support his related motion to dismiss.  The Government has not specifically addressed these requests, except to oppose, at oral argument, Hargrave's contention that the agent who testified before the Grand Jury deliberately misled the Grand Jury resulting in Hargrave's indictment under Count 2 by misconstruing an intercepted conversation between Richard Mullen and Hargrave as drug related when, according to Hargrave, the record shows it was not.  Schmukler Affirmation ¶ 2; Government's Response at 54.  The Government contends that no such further discovery of any kind is warranted.  Government Response at 22-23.

Grand jury proceedings carry a presumption of regularity.  *Hamling v. United States*, 418 U.S. 87, 139-40 (1974).  "A review of grand jury minutes is rarely permitted absent specific factual allegations of government misconduct." *United States v. Torres*,

18

901 F.2d 205, 232-33 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990); *United States v. Wilson*, 565 F.Supp. 1416, 1436-437 (S.D.N.Y. 1983) (denying inspection of the grand jury minutes where defense counsel argued that "a certain degree of discovery is necessary in order to fully verify and document these federal and state grievances and it is imperative that certain information be supplied to the defense, which is essential to mounting and successfully advancing this legal attack.")  Further, the secrecy of the grand jury will not be overcome without a showing of "particularized need."  *Dennis v. United States*, 384 U.S. 855, 871-72 (1966).  In the instant case, Defendants Funderburk and Pressley have not made a showing of "particularized need" to warrant disclosure of the requested transcripts.  As such, Defendants Funderburk's and Pressley's motions for disclosure of transcripts of testimony before the Grand Jury pertaining to the charges are DENIED.

Defendant Hargrave specifically requested that the court review minutes from the Grand Jury *in camera* and dismiss the Indictment against Hargrave, arguing that, based on a comparison of the affidavit in support of the Complaint in this case, under which Hargrave was in initially charged, and the Government's voluntary disclosure of a transcript of a Title III interception as related to Hargrave and Richard Mullen, any reference by the agent who testified against Hargrave before the Grand Jury based on an intercepted conversation between Richard Mullen and Hargrave, which occurred on June 22, 2004 ("the 26-5 conversation"), was likely taken out of context by the agent and thus misled the Grand Jury into charging Hargrave.  Defendant Hargrave's Memorandum of Law, filed June 2, 2005 (Docket Item No. 153-1) ("Hargrave

19

Memorandum") at 2.  According to Hargrave, the testifying agent therefore misled the

Grand Jury in that the agent's representation of the 26-5 conversation "deliberately

distorted the true meaning of the words spoken to provide at least the semblance of

probable cause." [12] *Id.*  In opposing Hargrave's request, the Government contends that

the 26-5 conversation, based upon the agent's experience in this area of law

enforcement, was cryptic language regarding narcotics trafficking and that, given the

information regarding Mullen and Hargrave available to the agent at the time of his

testimony, the agent's assessment of the 26-5 conversation incriminating Hargrave in

the conspiracy were not misleading.  Government's Response at 56-57.  Specifically,

the Government maintains that, at the time of "interception and analysis" of the 26-5

conversation, the agents were not aware of a rider to a rental lease agreement and an

alleged letter from a New York City rental agent, as produced by Hargrave and

submitted in support of Hargrave's position that the 26-5 conversation in fact concerned

a proposed rental of property in New York City.  *Id.* at 58.

At oral argument, and in its opposition to Hargrave's motion, the Government

countered Hargrave's contention by contending that, based on the testifying agent's

experience with drug trafficking and the information available to the agent at the time he

testified before the Grand Jury regarding the 26-5 conversation, the agent's

interpretation of the 26-5 conversation as incriminating was not inaccurate, his related

Grand Jury testimony was thus not misleading, and, as such, there exists no basis for

---

[12] Hargrave's alternative request, to dismiss the Indictment on this ground, is addressed in the Report and Recommendation issued contemporaneously with this Decision and Order.  Report and Recommendation at 65-67.

Defendant Hargrave's request.

As presented in the affidavit in support of the Complaint against Hargrave and

other Defendants the 26-5 conversation is as follows

> On June 22, 2004, at approximately 2:35 p.m., MULLEN utilizing the
> [t]elephone number (716/308-0672) makes an outgoing call to
> HARGRAVE (Call 052).  The following conversation ensues between
> RICHARD MULLEN and JOSEPH HARGRAVE: HARGRAVE tells
> MULLEN "Yeah, alright, 26-5."  And MULLEN responds "26-5?["] and
> HARGRAVE goes on to say "26-5, Two months rent and one months
> security (coughs) I mean 2 months security and 1 months rent."  Based on
> my experience with this investigation, I believe that MULLEN and
> HARGRAVE are cryptically discussing the price of a kilogram of cocaine.
> Based on my training and experience I understand that a kilo of cocaine
> costs 25,000-26,000 per kilogram.[13]

Hargrave Memorandum at 2.

The entire 26-5 conversation, obtained by Hargrave as a result of subsequent

voluntary discovery is as follows [14, 15]

| JH: | Hello. |
| RM: | Hey.  You call me? |
| JH: | Yeah, 26-5 [twenty-six five]. |
| RM: | 26-5? |
| JH: | Yeah.  Alright, 26-5, two months rent and one month's security.  No, I mean two month's security and one month's rent.  They'll paint the place. |
| RM: | Uh, 26-5, two month's rent. |
| JH: | That goes up 3% a year.  I'll sign a five year lease. |
| RM: | Five years[.] |
| JH: | Five year lease, yeah, 3% a year so in other words about $75, it adds up |

---

[13]  Bracketed material added.

[14] As identified in Hargrave's Memorandum, "JH refers to Joseph Hargrave, RM refers to Richard
Mullen and EM, in a later conversation, refers to E. Moses."  Hargrave Memorandum at 3.  See also
Hargrave Memorandum at 3.  (Bracketed material added).

[15] In his memorandum of law, Hargrave underlines that portion of the conversation he alleges the
agent used in his affidavit to support the Complaint.   However, to avoid confusion, such underlining is
deleted in this quotation of the 26-5 conversation.  It is undisputed that the entire 26-5 conversation was
not included in the supporting affidavit.

to about 75, 69, $70 a month, but it goes up every year.

RM: The other one was 136th and Park?

JH: No, 131st and Park[.]

RM: Yeah, Rich hold on a minute. Hold on. (Put on hold)[.]

JH: Hello.

RM: Yeah.

JH: Yeah so we have a deal. He's doing the credit check. He's [sic] said he's doing the check on me, and on the company. You know, but there is not going to be a problem. He said as soon as we sign a lease, we can have access to the place, and he said that as soon as we sign the lease he will give us a set of keys. But I'm saying, if we are going to be there in the first of July, I'd like to have as much stuff done, like the telephone company coming to do what they need to do, and all that stuff that we need to do so when we come in the 1st of July we can be set up.

RM: Alright, when will you have some free time today?

JH: Huh?

RM: When are you going to have some time so we can sit down and talk?

JH: Today, later on today[?]

RM: That's what I am saying.

JH: I'm downtown now, partially downtown that is, stopping to get something to eat. I've [g]ot some dudes to meet with, then I'll be back. Anytime, we can just go down. Really [a]nd truly it's not a bad deal. We need to get this done you know.

RM: I know. I'm just saying, I'd like to sit down and talk.

JH: We'll do that. I know. I told the dude I need to talk to my nephew before I make my final decision. I told him , [h]ey listen, I would call him back in about an hour, by the end of the day. As soon as you are free, come by the store.

RM: Come by where?

JH: By the store.

RM: Alright. Alright. I'll be there.

The actual testimony of the agent in regard to the 26-5 conversation before the Grand Jury is, of course, not before the court. However, even if it is assumed, for the purpose of analysis, that the entire conversation was not presented to the Grand Jury, as Hargrave surmises, the rationale for Hargrave's request is unavailing. In a case in which a federal indictment was primarily based on the alleged false or incomplete testimony of a government witness who testified before the grand jury, the Second Circuit nevertheless refused to disturb the challenged indictment, stating

22

> . . . we decline to adopt the proposition that grand jury testimony that has
> merely been thrown open to suspicion by post-indictment events is an
> invalid basis for the indictment.  Such a rule of law would necessitate
> independent judicial review of the credibility of grand jury witnesses, an
> exercise that would seriously infringe upon the traditional independence of
> the grand jury.  We consequently hold that where subsequent events
> merely cast doubt on the credibility of grand jury witnesses, due process
> does not require the prosecution to notify the grand jury of those events
> and seek a new indictment.

*United States v. Guilette*, 547 F.2d 743, 753 (2d Cir. 1976), *cert. denied*, 434 U.S. 839

(1977).

In *Guilette*, the government witness whose testimony was the primary basis for

the indictment admitted later to giving false testimony. *Guilette, supra,* at 752.

Nevertheless, the court refused to 'second-guess' the grand jury.  *Id.* at 753.  In the

instant case, Hargrave claims that the agent's interpretation of the disputed 26-5

conversation between Mullen and Hargrave, as assertedly provided to the Grand Jury,

was not supported by the entire conversation, and that the Government's failure, as

assumed by Hargrave for the purpose of this argument, to submit the complete 26-5

conversation to the Grand Jury resulted in the Grand Jury being misled into indicting

Hargrave on the instant drug conspiracy charge.  Hargrave's Memorandum at 1-8.

Admitting that the limited portion of the 26-5 conversation submitted to support the

Complaint was probably all of the 26-5 conversation the Grand Jury heard, if any,

Hargrave argues "[i]t must be assumed that the false evidence described above which

was employed by the government to contrive probable cause to obtain the criminal

complaint and arrest warrant for Hargrave was also presented to the grand jury which

returned the indictment."  Hargrave Memorandum at 6-7. (Underlining added).  The

court disagrees that the court must "assume" such an assertion, that the evidence (or

any other evidence submitted to the Grand Jury regarding Hargrave alleged involvement in the conspiracy) was "false," or that even if Hargrave's assertions as to the extent of the 26-5 conversation presented to the Grand Jury are correct such fact warrants the requested *in camera* inspection.

First, the Government does not concede only the portion of the 26-5 conversation, submitted in support of the Complaint, was presented to the Grand Jury in order to secure the Indictment against Hargrave.  However, even assuming, *arguendo*, that the limited portion of the 26-5 conversation relied on by Hargrave was all of the 26-5 conversation presented to the Grand Jury, Assistant United States Attorney ("AUSA") Mary Kane at oral argument stated that other testimony inculpating Defendant Hargrave in the conspiracy was presented to the Grand Jury include Hargrave in the Conspiracy Count.  Thus, even if the agent's testimony did mislead the Grand Jury, the other incriminating evidence submitted to the Grand Jury, as represented by the AUSA, supports the Indictment against Hargrave.  As the court cannot review the sufficiency of the evidence to support a federal indictment, Hargrave's request for an *in camera* review of the testimony is therefore futile.  *See Guilette, supra*.

In *United States v. Williams,* 504 U.S. 36, 46 (1992), the Supreme Court restated its holding in *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255-56 (1988), that the court's discretionary power to dismiss a grand jury indictment is limited to prosecutorial misconduct which violates "one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions."  Specifically, these rules include Fed.R.Crim.P. 6

(establishing Grand Jury secrecy) and 18 U.S.C. §§ 6002, 6003 (procedure for witnesses to obtain prosecutorial immunity); §1623 (criminally false statements); §2515 (prohibition against unlawfully intercepted communications); and §1622 (perjurious statements). *United States v. Mechanik,* 475 U.S. 66, 74 (1986) (internal quotation omitted). In *Bank of Nova Scotia v. United States,* 487 U.S. 250 (1988), where IRS agents provided "misleading and inaccurate summaries" to the grand jury, the Supreme Court determined there were insufficient grounds to dismiss the indictment as there was no evidence of prosecutorial misconduct. *Bank of Nova Scotia,* 487 U.S. at 260-61. *See also United States v. Strouse*, 286 F.3d 767, 774-75 (2002) ("What the *Williams* Court's reliance on *Nova Scotia* makes clear, then, is that the misconduct that amounts to a violation of one of those few clear rules . . . must involve government misconduct").

Thus, assuming that the agent misled the Grand Jury, deliberately or inadvertently, into indicting Hargrave by presenting an incomplete portion of the 26-5 conversation, or a faulty interpretation of the conversation, as the sole evidence of Hargrave's involvement in the alleged narcotics conspiracy, a conclusion that Hargrave maintains would not have been reached by the Grand Jury if it was presented with all of the 26-5 conversation, no evidence has been proffered by Hargrave suggesting the Government either knew of the incomplete or misleading nature of such testimony at the time it was given, or that the Government should have determined that the agent's assessment that the 26-5 conversation related to the purchase of narcotics was not based on his experience with narcotics trafficking conversations, but, rather, was an attempt to purposefully mislead the Grand Jury. Hargrave's failure to demonstrate that

the Government was complicit in misconduct sufficient to support dismissal therefore obviates any need for an *in camera* review of the relevant testimony.  Accordingly, Hargrave's motion for an *in camera* review is DENIED.

### 3.    Witnesses

Moving Defendants seek the identity of the Government's witnesses.  *E.g.*, Eoannou Affirmation ¶ ¶ 44-47.  In its response to Defendants' request, the Government maintains it is not required to reveal the names of witnesses before trial, citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Government's Response at 24.  Otherwise, the Government has not opposed Defendants' request.  Rule 16 of the Federal Rules of Criminal Procedure does not require the government to furnish the names of witnesses prior to trial.  *See United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir. 1990), *cert. denied*, 498 U.S. 921 (1990).  While a court may order disclosure of the identities of the government's trial witnesses, it should not do so in the absence of "a specific showing that disclosure is both material to the preparation of the defense and reasonable in light of the surrounding circumstances." *Bejasa, supra,* at 140.

Here, Defendants have made no showing that the identity of any witnesses, including unindicted co-conspirators, would be essential to their preparation for trial. Absent the requisite showing, the court will not order such pretrial disclosure. Defendants' motions are therefore DENIED.

### 4.    Notice of Intention Pursuant to Rule 12(d)

Defendants Funderburk and Richardson request that the Government provide

notice, pursuant to Fed.R.Crim.P. 12(d), of any evidence to which Defendants are entitled to discovery under Rule 16 and which the Government intends to introduce as evidence in chief at trial to permit Defendants to move to suppress such evidence. Funderburk Motion ¶ ¶ 42-47; Lobban Affidavit ¶ 11.  The Government has not specifically responded to their requests.  Rule 12(b)(4)(B) provides that defendants, in order to have an opportunity to seek suppression of evidence pursuant to Rule 12(b)(3)(c), are entitled to discover any evidence that they would be entitled to discover under Rule 16.  Fed.R.Crim.P. 12(b)(4)(B).  As the court has ruled on Moving Defendants' remaining Rule 16 discovery and inspection requests, Funderburk's and Richardson's requests pursuant to Fed.R.Crim.P. 12(d), to give additional notice of any evidence to which Defendants are entitled to discover under Rule 16, are DISMISSED as moot.[16]

## 5.    Discovery Pursuant to Fed.R.Evid. 403, 404(B) AND 609

The Moving Defendants' further seek information pursuant to Fed.R.Evid. 403, 404(b) and 609.  *E.g.*, Eoannou Affirmation ¶ 48.  In its response to Defendants' Rule 404(b) requests, the Government represents its intention to use the criminal history of Defendants as permitted by Rule 609 ("609") to impeach any Defendant if the Defendant testifies at trial.  Government's Response at 23.  Also pursuant to Fed.R.Evid. 404(b) ("Rule 404(b)"), Defendants request notice that the Government intends to use "evidence of the defendant's role in the distribution of controlled

---

[16] Richardson has filed no timely motion to suppress.  Funderburk's motion to suppress statements following his arrest is pending.

substances, including his/her prior conviction."  *Id.*   The Government represents it will

notify Defendants of its intent to use particular Rule 404(b) evidence when it files its

pretrial memorandum with the District Judge.  *Id.*

Rule 404(b) requires the Government to provide reasonable notice in advance of

trial of the general nature of any evidence of other crimes, wrongs, and acts it intends to

introduce at trial.  Fed.R.Evid. 404(b).  Therefore, the court directs the Government to

disclose all Rule 404(b) evidence which it intends to offer against any Defendant **no**

**later than 90 days prior to trial** in sufficient detail to permit defense counsel to

prepare and file appropriate motions *in limine* on the issue of admissibility.  To the

extent provided above, Defendants' motions for disclosure of Rule 404(b) evidence are

GRANTED; otherwise, Defendants' motions are DENIED.

Defendants also request pretrial disclosure of Fed.R.Evid. 608 and 609 ("Rule

608" or "Rule 609") material, *i.e.*, any other evidence the Government intends to use to

impeach the credibility of any Defendant who should testify at trial.  The Government is

under no obligation to provide impeachment material pursuant to Rules 608 or 609 prior

to trial unless it intends to introduce evidence of a conviction that is more than 10 years

old at the time of trial.  *United States v. Livoti*, 8 F.Supp.2d 246, 250 (S.D.N.Y. 1998);

*United States v. Song*, 1995 WL 736872 , *7 (S.D.N.Y. 1995).  In such case, Rule

609(b) directs that the government "give the adverse party sufficient advance written

notice of intent to use such evidence to provide the adverse party with a fair opportunity

to contest the use of such evidence."  Rule 609(b).  Further, before evidence of prior

convictions may be admitted at trial, Rule 609(a)(1) directs the court weigh the

probative value of a prior conviction against the prejudicial effect to the defendant. Fed.R.Evid. 609(a)(1).  "To perform this balancing, the court must know the precise nature of the defendant's testimony which is unknowable when . . . the defendant does not testify." *Luce v. United States*, 469 U.S. 38, 41 (1984).  Accordingly, under Rule 609(a), whether a specific conviction is admissible for impeachment purposes is an evidentiary decision which must await trial and determination by the trial judge. *United States v. Weichert*, 783 F.2d 23, 25 (2d Cir.) (citing *Luce, supra*, at 41), *cert. denied*, 479 U.S. 831 (1986).

The permissibility of impeachment evidence proffered under Rule 608 is subject to the same balancing test as Rule 609 evidence. *Weichert, supra*, at 25.  As such, any decision on whether either Rule 608 or 609 evidence is admissible must be submitted to Chief Judge Arcara, the trial judge in this case. *Weichert, supra*, at 25 (citing *Luce, supra*, at 41).  However, because the Government neither confirms nor denies its intent to introduce evidence of any Moving Defendant's conviction that is more than 10 years old at the time of trial, to the extent that the Government may decide to do so, the court GRANTS Defendants' requests for disclosure of such Rule 609 evidence and directs the Government to notify the Defendants of such convictions and its intent to use them at trial **no later than two weeks prior to the commencement of trial, or any other date as the District Judge may direct.**

### 6.    Discovery Pursuant to Fed.R.Evid. 702, 703 and 705

Fed.R.Crim.P. 16(a)(1)(G) provides that, with regard to expert witnesses,

> At the defendant's request, the Government must give to the defendant a

> written summary of any testimony that the Government intends to use
> under Rules 702, 703 or 705 of the Federal Rules of Evidence during its
> case-in-chief at trial.

Similarly as relevant, Fed.R.Crim.P. 16(b)(1)(c)(i)(ii) directs that

> The defendant must, at the Government's request, give to the government
> a written summary of any testimony that the defendant intends to use
> under Rules 702, 703 or 705 of the Federal Rules of Evidence as
> evidence at trial, if -

> (i)   the defendant requests disclosure under subdivision (a)(1)(G) and the
>       government complies . . .

In the instant case, Defendants request a list of the Government's expert

witnesses, written summaries of expert testimony the Government intends to use, and

"the substance of any reports from these witnesses that may be in their possession."

*E.g.*, Eoannou Affirmation ¶ 49. The Government has not responded to this request.

To the extent that the Government is or may be in possession of information covered by

this request, the motion is GRANTED.  Such information shall be provided **at least 30**

**days prior to trial, or any other date as the District Judge directs.**


7.    **Request for Exculpatory and *Jencks* Act Materials**

Moving Defendants seek disclosure of all *Brady* and *Giglio* materials, as well as

statements and reports of potential Government witnesses at trial pursuant to 18 U.S.C.

§ 3500 ("***Jencks* Act** materials"), including the names, addresses and criminal records

of all informants upon whose information the Government relied in investigating this

case and who may be called to testify for the Government.  *E.g.* Funderburk Motion ¶¶

23-41.  Particularly, Defendants move for disclosure of any arrangements or "deals"

with witnesses reached with the Government in exchange for information, including any

agreement, concession or grant of immunity and its terms extended by the Government

to the witnesses or prospective witnesses. *Id.* The Government has recognized its

ongoing duty to provide any exculpatory or mitigating evidence in its possession to

Defendants, including any information that would impeach a government witness.

Government's Response at 24-27. Specifically, the Government agrees to provide the

following impeachment material

> promises of leniency or immunity agreements with government witnesses,
> plea and/or non-prosecution agreements and letters or memorandum of
> understanding regarding such, criminal arrest records of all prosecution
> witnesses, immoral, vicious or criminal acts committed by the witnesses or
> family members thereof, and all other promises or considerations given by
> government personnel to government witnesses or family members
> thereof, in accordance with the schedule set by the District Court prior to
> trial and no later than when the government produces and delivers the
> Jencks Act material in this case.

Government's Response at 26.

   *Brady v. Maryland*, 373 U.S. 83 (1963), requires the prosecution provide the

defense with any evidence favorable to the accused where the evidence is material to

guilt or punishment. Further, the defense is entitled to pertinent evidence regarding a

material witness's credibility or reliability, including evidence of any agreement or

promises of leniency between the government and a government witness. *Giglio v.*

*United States*, 405 U.S. 150, 154 (1972). Failure of the government to reveal evidence

of an understanding in return for testimony may violate due process. *United States v.*

*Pfingst*, 477 F.2d 177, 191 (2d Cir.), *cert. denied,* 412 U.S. 941 (1973); *United States v.*

*Feola*, 651 F.Supp. 1068, 1135 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

There is, however, no absolute right to pretrial discovery of *Brady* material. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir. 2001) ("disclosure [of *Brady* material] prior to trial is not mandated") (bracketed material added); *United States v. Gil,* 297 F.3d 93, 105 (2d Cir. 2002) (quoting *United States v. Coppa,* 267 F.3d 132, 144 (2d Cir. 2001) (a prosecutor must disclose *Brady* material "in time for its effective use" at trial)); *United States v. Ullah*, 2005 WL 629487, * 9 (W.D.N.Y. 2005).  Although, *Brady* does not authorize a general right of pretrial discovery and primarily seeks to avoid unfair trials resulting from suppression of exculpatory material, courts have nonetheless ordered pretrial disclosure of *Brady* material.  *United States v. Taylor*, 707 F.Supp. 696, 703  (S.D.N.Y. 1989) (disclosure of *Brady* materials one week prior to trial, except that impeachment materials pertaining to government witnesses should be disclosed the day before that witness will take the stand); *Feola, supra,* at 1136 (disclosure thirty days prior to trial).

As noted, 33 Defendants face a single charge of conspiracy to possess with intent to distribute and to distribute narcotics between September 2001 and August 3, 2004. [17]  Three Defendants, Richard Mullen, Frederick Nolley and Edmond, are charged with possession with intent to distribute and to distribute five kilograms or more of narcotics on or about January 13, 2003, and four Defendants, Richard Mullen, Frederick Nolley, Stranc and Edmond, are charged with possession with intent to distribute 500 grams or more of narcotics on March 4, 2003.  Further, Defendant Mullen

---

[17] There were 33 Defendants originally charged with conspiracy to  possess with conspiracy with intent to distribute, and to distribute narcotics between September 2001 and August 3, 2004.  As previously indicated, however, Defendants Askew, West and Gilmore have since been dismissed as Defendants.  As such, there are at present 30 Defendants being prosecuted under the Conspiracy Count.

is charged in Count 1 with operating a continuing criminal enterprise, and Defendant Hall is charged in Count 5 with possession with intent to distribute five grams or more of narcotics on April 2, 2004.  The court therefore observes the prosecution of this case may involve a large number of witnesses and documents and a substantial amount of wiretap evidence.  Based on the Government's representation that it will voluntarily disclose all *Brady* impeachment materials in accordance with the schedule set by the District Court prior to trial and no later than any production of material pursuant to the ***Jencks Act,*** as well as the acknowledgment of its continuing duty to provide exculpatory material to Defendants under *Giglio*, the court finds that any *Brady* and *Giglio* material, including any impeachment material, should be turned over to the defense **no later than two weeks prior to the commencement of trial or such other date as the District Judge may direct.**

Defendants have also requested the disclosure of ***Jencks Act*** material, pursuant to 18 U.S.C. § 3500.  The court, however, has no authority to require pretrial disclosure of ***Jencks Act*** material.  *United States v. Ullah,* 2005 WL 629487, * 7 (W.D.N.Y. 2005) (citing *United States v. Scotti*, 47 F.3d 1237, 1249-50 (2d Cir. 1995) (denying pretrial production of ***Jencks Act*** material and citing *United States v. Sebastian*, 497 F.2d 1267, 1269-70 (2d Cir. 1974) (holding the court cannot compel pretrial production of ***Jencks Act*** material)).  Based on the Government's representation that it will comply with the pretrial order of the District Judge concerning the pretrial disclosure of witness statements pursuant to 18 U.S.C. § 3500, Defendants' motions for an order directing such disclosure are DENIED.

8.      **Identity of Informants**

Moving Defendants have requested the Government provide the names of the informants or cooperating sources who provided information to investigators in this case concerning the pending charges. *E.g.,* Eoannou Affirmation ¶¶ 55-58. Specifically, Defendants assert disclosure is required to enable Defendants to challenge the informants' credibility, as potential trial witnesses and their reliability in support of the wiretap orders and search warrants obtained in this case. *Id.* ¶ ¶ 56-57. Alternatively, Defendants request *in camera* interviews of the informants directed to these issues. *Id.* ¶ 58. The Government opposes such disclosure, arguing that, through voluntary discovery conducted over the past 18 months, Defendants have been provided with the substance and particulars of the informants' testimony based on information as revealed in the copies of the various Title III applications Defendants received through voluntary discovery from the Government. Government's Response at 27. However, the Government does not state that the confidential informants will not testify for the Government at trial.

Substantial policy considerations override the need for full disclosure of informants' identities. *Roviaro v. United States*, 353 U.S. 53, 61 (1957) (holding that informer's privilege must yield to disclosure at trial if necessary to a "fair determination"). Disclosure of the identity of confidential informants may be withheld to protect the anonymity of informants and to secure the informants' continued cooperation in furnishing information regarding violations of law. *Roviaro,* 153 U.S. at 59; *United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976

(1997). It is equally permissible to withhold information from which such identity may be inferred and thus revealed. *See Roviaro, supra*, at 60. It is well settled that "an informant's identity need not be disclosed unless 'essential to the defense.'" *United States v. Morales*, 280 F.Supp.2d 262, 271 (S.D.N.Y. 2003) (quoting *United States v. Russotti*, 746 F.2d 945, 949 (1984) (quoting *Scher v. United States*, 305 U.S. 251, 254 (1938)).

In determining whether disclosure is essential, courts are required to balance the public's interest in obtaining information to assist law enforcement against the defendant's right to prepare a defense. *Roviaro, supra*, at 62; *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003). A confidential informant's identity or the contents of an informant's communication must therefore be disclosed if such information is "relevant or helpful" to an accused's defense at trial, particularly in relation to a potential entrapment defense or a defendant's knowledge of the character of the contraband. *Roviaro, supra*, at 60-61, 64; *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991); *see also United States v. Jackson*, *supra*, at 69-70 (approving informant identity disclosure to facilitate entrapment defense to drug sale charge).

Defendants bear the burden of establishing the need for such disclosure and such need will be found only upon demonstrating that the absence of such disclosure will deprive the defendant of a fair trial. *Fields,* supra, at 324; *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). Nevertheless, the prosecution is not required to disclose the identity of a confidential informant to assist a defendant in attacking, at pretrial suppression hearings, probable cause for a warrantless arrest and search. *McCray v.*

*Illinois*, 386 U.S. 300, 305 (1967) (no disclosure required, based on evidence, where

presiding judge satisfied that the informant relied upon by arresting officer existed and

was reliable); *Roviaro, supra*, at 61 (noting cases requiring disclosure where

warrantless searches based on anonymous informants' information were at issue);

*Fields, supra,* at 324 (*in camera* appraisal by trial court of informant's accuracy to

establish probable cause for warrantless search obviates any need for disclosure of

informant's identity).

In the instant case, Defendants contend that the Government must disclose the

identity of its informants so that the court can accurately determine the informants'

potential lack of credibility as sources of information relating to the underlying

investigation, as well as their reliability in support of the wiretap and search warrants

issued as part of the investigation.  *E.g.*, Eoannou Declaration ¶ 57.  Defendant

Funderburk asserts that disclosure is necessary as the informants may be witnesses to

the instant charges and possess exculpatory evidence.  Funderburk Motion ¶ 22.

Defendants' generalized assertions on both grounds for disclosure are insufficient to

demonstrate the need for the requested disclosure.

In this case, the probable cause determinations that were based in part on the

confidential informants whose identities Defendants seek, were made by several

federal judicial officers who issued the eavesdropping orders and the search warrants.

It is apparent from the record that those judicial officers found no need to require

disclosure of the informants' identities to assist in making a determination of probable

cause given the reliability of their information, as corroborated by the DEA, and

revealed to such judicial officers in the detailed applications for the wiretap orders and search warrants.

Where defendants seek to suppress evidence obtained under a search warrant, the need to disclose an informant's identity is substantially diminished.  *See Roviaro, supra*, at 61 (citing cases); *Fields, supra*, at 324 ("Need for disclosure far less compelling . . . when sought in connection with a pretrial suppression hearing on issues which do not bear on defendant's guilt.").  While the potential need for *in camera* consideration of an informant's reliability is recognized where warrantless searches and seizures are at issue, *see Fields, supra*, Defendants cite no authority directing disclosure, or *in camera* review, to assist a defendant in challenging a duly issued wiretap order or search warrant.  *See, e.g., Williams v. Brown*, 609 F.2d 210, 221 n. 8 (5th Cir. 1980) (declining to determine whether defendant entitled to informant's identity to facilitate collateral attack on search warrant based on information provided by informant).  Defendants' contentions that such disclosure may enable them to successfully challenge the issuance of any search warrants or Title III application are therefore speculative and without legal basis, and as such are insufficient to warrant disclosure.  *See also United States v. Benjamin*, 72 F.Supp.2d 161, 182 (W.D.N.Y. 1999) (noting that *Franks* does not extend to falsity of statements made by informant to applicant for search warrant unless informant was a government official) (citing *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996)).

Moreover, Defendants do not demonstrate how any informant's identity is

material to their defense at trial, and have therefore failed to meet their burden under *Roviaro* on this ground for disclosure.  Particularly, Defendant Richard Mullen argues that disclosure is needed to enable him to "put forth a complete defense."  Eoannou Declaration ¶ 57.  However, such a generalized assertion of need fails to establish the "possible significance of the informant's testimony," *Rovario, supra*, at 62, and therefore does not outweigh the Government's interest in non-disclosure.  *United States v. Flaherty*, 295 F.2d 182, 202 (2d Cir. 2002) (possible benefit of disclosure to defense must be non-speculative).  Funderburk also contends that the informants are "percipient witnesses" and "may have exculpatory" information.  Funderburk Motion ¶ 22.  However, as with Defendant Mullen's rationale for disclosure, Funderburk's contention also lacks sufficient specificity given the circumstances of this case to warrant disclosure.  As such, it is speculative and provides no grounds for disclosure.  Although Defendant Funderburk relies on several cases, Funderburk Memorandum ¶¶ 153-161, these cases are inapposite to the conspiracy charge against Funderburk and the other Defendants.  For example, in only one case cited by Funderburk, *United States v. Miramon*, 143 F.2d 361 (9th Cir. 1971) (*per curiam*) was disclosure directed based on the defendant's potential entrapment defense.  Here, no Defendant has asserted an entrapment defense as a reason for disclosure of the informants' identities.

Moreover, to require disclosure a defendant must show more than that the informant witnessed the offense or may undermine the general credibility of government witnesses.  *United States v. Flaherty,* 295 F.3d 182, 202 (2d Cir. 2002) (citing *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988)), *cert. denied*, 489 U.S.

38

1089 (1989);   *Morales, supra*, at 271 (participation of informant in conspiracy in itself is insufficient to require disclosure of informant's identity).  Nor has Funderburk suggested any other possible defense at trial to which the testimony of one of the informants could be material such as Funderburk's identity or his culpable knowledge of the conspiracy. *Rovario, supra,* at 64*; United States v. Russotti*, 746 F.2d at  949; *United States v. Morales, supra*, at 271 (conclusory statements insufficient to require disclosure). Additionally, in the instant case, evidence of Funderburk's and other Moving Defendants' involvement in the alleged conspiracy is based primarily on wiretap evidence, irrespective of any potential informant testimony that supported the probable cause determination or may be offered at trial.  Thus, neither of Defendants' rationales for the requested disclosure have merit.  Accordingly, Moving Defendants' motions for disclosure of the identity of confidential informants are DENIED.


**9.     Motion to Sever Pursuant to Rule 14 and Rule 8**

Defendants Richard Mullen, Adams, McKnight and Funderburk move for a severed trial, pursuant to Fed.R.Crim.P. 8 and 14.[18]  Eoannou Affirmation ¶¶ 75-79; LaTona Affidavit ¶¶ 31-36; Hoffman Affidavit ¶ 7; Funderburk Motion ¶ 153-61. Specifically, Defendant Mullen maintains that (1) evidence against any one of the other co-Defendants in this case may be prejudicial to him at a joint trial, (2) the defense theories of many of these Defendants conflict, and (3) incriminating statements the

---

[18] The Government, in its response, states that Mullen, Adams and McKnight moved for severance.  As a result, the Government did not address Funderburk's severance motion in its response. Government's Response at 29.

Government will use against some co-Defendants may unfairly prejudice other

Defendants, particularly Mullen.  Eoannou Affirmation ¶¶ 75-79.  Defendant Adams

seeks severance from any Defendant against whom Fed.R.Evid. 404(b) evidence will

be introduced at trial, and from those Defendants charged in Counts 1, 3, 4 and 5.

LaTona Affidavit ¶¶ 31-34.  Defendant Adams contends there is no basis for joining the

conspiracy charge with the substantive counts alleged against other Defendants in the

Indictment.  *Id.* at ¶ 35.  Specifically, Adams argues that the CCE Count in the

Indictment charges Richard Mullen but no other co-Defendant, and that "the indictment

provides no basis to believe that the other substantive counts were committed in

furtherance of the conspiracy."  *Id.*  Defendant McKnight requests a severed trial

because he alleges that the "spillover" prejudice that would result from a joint trial would

deprive him of the right to a fair trial.  Hoffman Affidavit ¶ 7.  Defendant Funderburk

contends his trial should be severed from that of the co-Defendants because, on their

face, the allegations demonstrate Funderburk's minor role in the conspiracy, as,

according to Defendant Funderburk, he is alleged to have had "very little if any contact

with any of the co-defendants," Funderburk's Motion ¶¶ 158, and that Funderburk would

therefore be unfairly prejudiced by the evidence offered against his co-Defendants if he

is jointly tried with them.  *Id.* ¶ ¶ 158-161.

   In response, the Government contends Defendants have not shown the requisite

serious potential for undue prejudice required to grant a request for severance, nor that

any co-Defendant is willing to testify in Mullen's, Adams's, McKnight's or Funderburk's

defense at a severed trial and also waive his or her Fifth Amendment privilege who

would not otherwise so testify at a joint trial of these Defendants.  Government's Response at 29, 32-33.  The Second Circuit has stated that "proof that a co-defendant would waive his Fifth Amendment privilege and testify at a severed trial" is a factor to consider in determining whether to grant Defendant's motion for severance on the ground that a co-defendant would offer "exculpatory testimony at a separate trial." *United States v. Cardascia,* 951 F.2d 474, 485 (2d Cir. 1991).  However, as none of these Defendants allege that a joint trial will prevent a co-Defendant from providing testimony favorable to any of them or that any co-Defendant would waive their Fifth Amendment privilege and provide testimony at a separate trial to exculpate them on the charges against them, Defendants' motions for severance are without merit on this ground.  *Cardascia, supra.*

A court considering a motion for severance under Fed.R.Crim.P. 14 should make a two-step inquiry, *i.e.,* "whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir.), *aff'd,* 894 F.2d 501 (2d. Cir. 1990).  If the joinder was proper, the court shall then decide whether the joinder was prejudicial to the defendant pursuant to Fed.R.Crim.P. 14. *Ruiz, supra*, at 505.  The decision whether to grant severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081 (1990).  "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (narcotics conspiracy case).  Joinder of counts in an indictment is proper, pursuant to Fed.R.Crim.P. 8(a), where two or more

persons' criminal acts are "'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme'" as in a conspiracy case. *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989).

Here, the CCE and Conspiracy Counts are plainly connected as the CCE count alleges Mullen operated the criminal enterprise as more fully alleged in the Conspiracy Count, thereby demonstrating the requisite identity of facts and participants.  As such, the requirement for joinder of counts under Rule 8(a) permitting joinder of counts that "are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of the same scheme or plan" has been satisfied. Therefore, as Mullen, Adams, McKnight and Funderburk are charged in Counts 1 and 2, neither count, as joined in the Indictment, violates Rule 8(a) as to these Defendants. Similarly, the substantive 21 U.S.C. § 841 counts, Counts 3 and 4, against Mullen are also properly joined as a plain reading of the Indictment demonstrates the violations occurred during the period the charged conspiracy against Mullen and all other Defendants and the CCE charge against Mullen, alleged in Counts 1 and 2, were operative.  Because the substantive § 841 counts, Counts 3, 4 and 5, are alleged to have occurred within the period of the Conspiracy Count and the CCE Count they are also plainly "connected . . . with the same scheme or plan," *i.e.*, CCE and Conspiracy. Fed.R.Crim.P. 8(a).  As such, they are properly joined in the Indictment as authorized by Rule 8(a).  Accordingly, all counts as to Mullen, Adams, McKnight and Funderburk were properly joined in the Indictment in compliance with Rule 8(a).

Nevertheless, a court is authorized to sever counts or defendants, pursuant to

42

Fed.R.Crim.P. 14(a), "[i]f it appears that a defendant . . . is prejudiced by a joinder,"

despite an indictment's facial compliance with Fed.R.Crim.P. 8(a). *United States v.*

*Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003); *United States v. Nguyen*, 793 F.Supp. 497,

503 (D.N.J. 1992). However, a defendant has a "heavy burden" to show facts

demonstrating that the defendant would be so prejudiced by a joint trial, that the joint

trial would, in effect, deny him or her a fair trial. *United States v. Piervinanzi*, 1990 WL

139021, * 2 (S.D.N.Y. 1990). Specifically, a defendant requesting severance under

Fed.R.Crim.P. 14 must show substantial prejudice resulting from joinder, not just that

he would have a better chance for acquittal at a separate trial. *United States v. Torres*,

901 F.2d 205, 230 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990); *United States v.*

*Villegas*, 899 F.2d 1324, 1347 (2d Cir.), *cert. denied,* 498 U.S. 991 (1990).

As a ground for severance, Defendant Mullen contends that many co-

Defendants in this case have defense theories that directly conflict with his. However,

"the mere fact that codefendants seek to place blame on each other is not the sort of

antagonism that requires a severance." Further,

> When the challenge to the denial of severance is premised
> on a claim that two defenses were antagonistic, a defendant
> satisfies his burden of showing substantial prejudice only if it
> can be said that "'the jury, in order to believe the core of
> testimony offered on behalf of [one] defendant, must
> necessarily disbelieve the testimony offered on behalf of his
> co-defendant.'"

*United States v. Villegas,* 899 F.2d at 1346 (internal citation omitted).

Defendant Mullen fails to explain why the jury must disbelieve testimony one co-

Defendant offers to accept the testimony proffered by another in support of his defense,

nor has Mullen provided any examples to support this general allegation.  *See Zafiro, supra.*  As such, Mullen's motion to sever his trial is DENIED on this ground.

Defendants Funderburk and McKnight contend that their respective roles in the alleged conspiracy warrant a separate trial for each of them because of the "spillover prejudice" that will necessarily result from the likely evidence against co-Defendants at a joint trial which, according to Funderburk, has little, if any, relevance to him. Funderburk's Motion ¶¶ 153-161; Hoffman Affidavit ¶ 7.  As stated, where such "spillover evidence" is alleged as a ground for a Rule 14 severance, the defendant's burden to demonstrate substantial prejudice resulting in an unfair trial is heavy. *Villegas, supra*, at 1346 (citing *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.), *cert. denied*, 469 U.S. 918 (1984)).  Additionally, "differing levels of culpability and proof are inevitable in any multiple defendant trial and, standing alone, are insufficient grounds for separate trials." *Torres*, *supra*, at 230.

The court finds Defendants Funderburk and McKnight have not met their burden of establishing substantial prejudice will occur as a result of a joint trial against them on the Indictment.  Defendants' argument that they will be unduly prejudiced because of the extensive alleged culpability of some of their co-Defendants, in comparison to the asserted lesser degree of their asserted individual involvements in the alleged conspiracy, does not require granting said Defendants a separate trial because the court must also consider, based on the nature of the expected evidence, the jury's ability to weigh the evidence against the individual co-Defendants at a joint trial.  In particular, in addition to the various levels of culpability of the co-defendants, the court

44

must consider the jury's ability to weigh the evidence against each co-defendant separately and equitably. *United States v. Kahaner*, 203 F.Supp. 78, 81-82 (S.D.N.Y. 1962) (if jury can "collate and appraise independent evidence against each defendant solely upon the defendant's own acts" and render a fair verdict as to each defendant, severance is unnecessary), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836 (1963); *see also United States v. Perez*, 940 F. Supp. 540, 546 (S.D.N.Y. 1996) (citing *United States v. Chang An-Lo,* 851 F.2d 547, 556 (2d Cir. 1988) (severance was denied where evidence regarding each defendant "was adequately straightforward that the jury could consider it without any significant spillover effect.")).  Generalized assertions as to the expected prejudicial effect of such "spillover evidence" are insufficient to entitle a defendant to severance.  *See Casamento, supra,* at 1149-150; *see also United States v. Nersesian,* 824 F.2d 1294, 1303 (2d Cir. 1987) (it is not sufficient to show a likelihood that a separate trial would benefit a defendant, rather, the prejudice shown must be so substantial as to amount to a "miscarriage of justice"), *cert. denied*, 484 U.S. 958 (1987).

    Here, in contrast to more complex narcotics conspiracy cases involving even larger groups of defendants, courts have not found properly instructed juries are unable to fairly parse and evaluate the evidence individually so to require severance.  *See, e.g., United States v. Casamento,* 887 F.2d at 1153.   Further, the court finds a properly instructed jury in this case would be "reasonably able" to weigh the evidence as revealed in the present record against the individual Defendants, including McKnight and Funderburk, apart from the evidence proffered against any co-Defendants.  In

45

particular, a properly instructed jury will be able to determine, for example, whether in

his contacts with Defendant Frederick Nolley, Funderburk's brother-in-law, allegedly tp

assist Nolley in avoiding detection while Nolley engaged in narcotics trafficking for

Mullen, Funderburk intended to facilitate Mullen's narcotics trafficking conspiracy as

charged in the Indictment.  Funderburk Motion ¶¶ 156-161; Government's Response at

13.

 Defendant Adams urges the court to sever his case from the conspiracy at issue

on the ground that "the admission of 404(b) evidence against one defendant can

provide a basis for severance on behalf of a different defendant," citing *United States v.*

*Figueroa*, 618 F.2d 934 (2d Cir. 1980).  LaTona Affidavit ¶ 12.  The court finds that

consideration of Adams's motion to sever on this ground at the present time is

premature.  In *Figueroa,* the court stated

> When evidence is offered against one defendant in a joint trial,
> determination of admissibility against that defendant resolves only the
> Rule 403 balancing as to him, i.e., that the probative value of the evidence
> in his "case" is not substantially outweighed by unfair prejudice to him.
> But if the evidence creates a significant risk of prejudice to the co-
> defendants, a further issue arises as to whether evidence is admissible in
> a joint trial, even though limited by cautionary instructions to the "case" of
> a single defendant.  If the justification for a joint trial is outweighed by the
> prejudice to the co-defendants, the trial court can confront the prosecutor
> with the choice of forgoing either the evidence or the joint trial . . .. it is
> safe to assume that on the few occasions when the problem arises, this
> choice will generally not mean less joint trials, only less use of prejudicial
> evidence in joint trials.

*Figueroa,* 618 F.2d at 944-45.  In the instant case, as discussed, Discussion, *supra,* at

27-29, the Government in its Response to Defendants' Motions represented that it will

use evidence permitted by Federal Rules of Evidence 609 and 404(b), but that it will

first notify defendants "of such intention and the particulars of such information" when it

files its pretrial memorandum with the District Court.  Government's Response at 23.  At

that time, the trial court will be in a better position to weigh the probative value of the

proposed evidence against the prejudicial effect such evidence may have on co-

Defendants in this case, including Defendant Adams.  *Figueroa, supra*.  Should the trial

court find at that time the prejudicial effect upon some co-Defendants outweighs the

probative value of the evidence against Defendant Adams, and that substantial

prejudice is likely to result in an unfair trial to such Defendants, the court will either

require the Government to forgo introduction of the evidence at the joint trial or the

court will permit its use in a severed trial as to Defendant Adams.  Accordingly,

Defendant Adams's motion to sever pursuant to Fed.R.Evid. 404(b) is DISMISSED

without prejudice to renewal before the District Judge prior to, or during, trial.

Therefore, other than similar generalized and unfounded assertions of unfair

prejudice, neither Funderburk, Richard Mullen, McKnight nor Adams has established a

significant risk that he would be unduly prejudiced by a joint trial on the Conspiracy

Count with the other co-Defendants and counts as presently charged in the Indictment.

Accordingly, Defendants have failed to meet their burden to show that severance is

warranted and their motions are, therefore, DENIED, without prejudice to renewal at

trial.

**10.**     **Pretrial Audibility Hearing**

Defendants Pressley and Funderburk request an audibility hearing as to the tape

recordings the Government seeks to introduce at trial.  Pressley Motion at 16-17;

Funderburk Motion ¶¶ 151-152.  The Government asks the court to deny Pressley's motion, stating that Pressley failed to identify any portions of tapes or transcripts as inaudible.  Government's Response at 63.  The Government does not acknowledge or address Funderburk's motion for an audibility hearing.  Significantly, Funderburk also failed to identify specific tapes or transcripts or portions thereof as inaudible. Funderburk Motion ¶¶ 151-152.   Further, the Government represents it will identify the conversations it will introduce in its case-in-chief in a timely fashion before trial affording Defendants an opportunity to move against their admission at trial based on audibility grounds if necessary at a later date.  *Id.*

The determination of the admissibility of any tape recorded conversation, based on asserted inaudibility, must be made outside the presence of the jury.  *United States v. Kipp*, 990 F.Supp. 102, 106 (N.D.N.Y. 1998) (citing *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973)).  The Government indicates that it does not anticipate introducing all tape recordings at trial.  Government's Response at 63.  Moreover, Defendants have failed to particularize those conversations the Government plans to offer as evidence that they believe to be inaudible.  Additionally, defense counsel may be satisfied with the audibility of the tapes the Government will introduce at trial once identified by the Government.  *See United States v. Yan*, 704 F. Supp. 1203, 1207 (S.D.N.Y. 1988).  As such, it is unnecessary and premature for the court to conduct an audibility hearing at this time.  Accordingly, the court directs the Government to identify and advise Defendants as to the specific recordings it intends to offer at trial **at least 30 days prior to trial or such other date as the trial judge directs**.  Defendants

48

Pressley and Funderburk may then submit the specific portions of the identified

recordings which they contend are inaudible, if any, as a prerequisite to any audibility

hearing.   *See United States v. Comer*, 1996 WL 492704, *4 (N.D.N.Y. 1996) (where

the court denied defendants' motions for a pretrial audibility hearing "without prejudice

to renewal upon their particularized showing, after hearing the audiotapes, that an

audibility hearing is necessary"), *cert. denied,* 531 U.S. 886 (2000).   Accordingly,

Defendants' request for an audibility hearing is DENIED without prejudice to renewal

following the Government's pretrial identification of the relevant tape recordings to be

offered at trial from which Defendants may specifically identify allegedly inaudible, and

thus inadmissible, portions for the court's review.   Such motion shall be directed to the

trial judge or the trial judge may refer such matter to the undersigned for a further

Report and Recommendation.

**11.**   **Motion for Preservation of Rough Notes and other Evidence**

Defendants have requested the court direct the preservation of all rough notes

taken by all investigators involved in the present matter, including all rough notes

regardless of whether such notes have already been incorporated into official

government records.   *See*, *e.g.*, Funderburk Motion ¶ 91.   The Government has not

responded to this request.

Agents are not required to produce or preserve handwritten notes if such notes

have been incorporated into final reports.   *United States v. Elusma*, 849 F.2d 76, 79 (2d

Cir. 1988), *cert. denied*, 489 U.S. 1097 (1989); *United States v. Gotchis*, 803 F.2d 74,

78 (2d Cir. 1986) (no obligation on the government to preserve notes later reduced to

formal reports).  Where the government has acknowledged a defendant's request for preservation of such notes, courts have refused to order agents to retain and preserve the notes.  *United States v. Maneti*, 781 F.Supp. 169, 187 (W.D.N.Y. 1991).  Nonetheless, preservation of handwritten notes has been ordered where there were no final reports written.   *See, e.g.*, *United States v. Hoyos*, 1992 WL 51686 (N.D.Ill. 1992) (court granted defendant's motion for an order directing agents to retain and preserve all rough notes relating to case); *United States v. Taylor*, 707 F.Supp. 696, 707 (S.D.N.Y. 1989) (court directed the government to preserve original handwritten notes of interviews with potential witnesses).  Here, the court has not been informed if final reports by testifying agents are available.

Based on the applicable caselaw, the court directs that the Government take steps to preserve any rough notes taken by law enforcement officials during the investigation of this matter that have not been incorporated into final written reports.  The court will not, however, direct the preservation of any notes which have been incorporated into official records.  *Elusma, supra,* at 79; *Gotchis, supra,* at 78.  Further, pursuant to Defendants' requests, the court directs the Government to preserve any evidence in its possession for trial.  The Government is under a continuing duty to preserve discoverable evidence.  *United States v. Grammatikos*, 633 F.2d 1013, 1019 (2d Cir. 1980).  *See also United States v. Valone*, 1988 WL 59255 (W.D.N.Y. 1988) (Elfvin, J.) (motion to preserve evidence granted).

**12.    Motion for Leave to Make Other Motions**

Defendants seek permission to make any further motions the necessity for which

becomes evident in the future.  The Government does not oppose Defendants' request

for leave to file such other motions.  Instead, the Government reserves the right to file

amendments to its motion and to reply to additional motions that may be filed by the

Defendants.  Government's Response at 72.  Defendants' motions are GRANTED

insofar as any Defendant may demonstrate circumstances which could not have

reasonably supported earlier filing of motions in accordance with the scheduling order.

*See* Fed.R.Crim.P. 12(e).

13.    **Motion for Leave to Join in Co-Defendants' Motions**

As earlier indicated, Defendants Richard Mullen, Adams, Frederick Nolley, Terry

Mullen, Edmond, Hargrave, Pressley, Lee, Palmer, Richardson, and Funderburk

request permission to join any pretrial motion made by their co-Defendants.

Defendants Ayanna Nolley and McKnight request permission to join their co-

Defendants' motions objecting to the electronic surveillance conducted by law

enforcement.  Defendant McKnight further requests permission to join in his co-

Defendants' motions for discovery and a Bill of Particulars.  Defendants Hall, Hearst,

Weeks, Graham, Wilkie, Askew, McPeek, K. Davis, J. Davis, Turner, Jackson, Watson,

Degree and Amidon filed no pretrial motions.  Background, *supra*, at 9 n. 5-6.

Accordingly, Defendants' motions are GRANTED insofar as each Defendant has

standing to make such requests and the relief requested was timely sought by other

Moving Defendants.

**14.**     **Motion for Counsel Participation in *Voir Dire***

_____Defendant Pressley moves for "at least a thirty minute opportunity" for active counsel participation in jury selection, *i.e., voir dire,* stating it is necessary to ensure a fair and impartial jury.  Pressley Motion Part VIII.  The Government does not specifically oppose Pressley's request.  Fed.R.Crim. P. 24(a)(1)(2) provides that "the court may examine prospective jurors or may permit the attorneys for the parties to  ... ask further questions that the court considers proper; or ... submit further questions that the court may ask if it considers proper."  Pursuant to Fed.R.Crim.P. 24(a)(2)(B) ("Rule 24(a)(2)(B)"), Pressley shall submit his request to Chief Judge Arcara, the trial judge, in accordance with Judge Arcara's pretrial orders and Rule 24(a)(2)(B).  Thus, Pressley's motion for counsel participation in *voir dire* is DISMISSED without prejudice.

**15.**     **Motion to *Voir Dire* Government Experts Outside the Presence of the Jury**

Funderburk and Pressley move to *voir dire* the Government's experts outside the presence of the jury.  Funderburk's Motion ¶¶ 145-150; Pressley's Motion Part X.  The Government has not opposed this motion.

Trial judges must act as "gatekeepers" to exclude all unreliable expert testimony, not simply unreliable scientific expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); 2000 Amendment to Advisory Committee Notes for Fed.R.Evid. 702.  Fed.R.Evid. 702 was amended in 2000 to provide that "all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful."  2000 Amendment to Advisory Committee Notes for Fed.R.Evid. 702.  Expert testimony will be admitted or

excluded pursuant to Fed.R.Evid. 104(a), which places the burden of establishing the testimony's admissibility on the proponent of such testimony by a preponderance of the evidence.  *Id.; Bourjaily v. United States,* 483 U.S. 171, 175-76 (1987).  As the Government has not identified its expert witnesses, it is not possible at this point for Defendants to assert the potential inadmissibility of such testimony pursuant to Rules 104(a) and 702.  Therefore, this court orders the Government identify which expert witnesses it intends to offer at trial **no later than 30 days before trial or such date as directed by the trial judge.**  Upon such notice, Defendants may renew their requests to *voir dire* the Government's experts pursuant to Fed.R.Evid.104(a) outside the presence of a jury, if necessary.  The requests should be directed to the trial judge.  As such, Defendants' motions to *voir dire* at this time are DISMISSED without prejudice to renewal before the trial judge.

### 16.    Discovery Pursuant to Fed.R.Evid. 807

Defendant Adams requests the Government to provide pre-trial notice of any statements the Government intends to use at trial pursuant to the residual exception to the hearsay rule under Fed.R.Evid. 807.  LaTona Affidavit ¶¶ 126-28.  The Government does not oppose Defendant's motion.  As such, Defendant's request for disclosure of statements which qualify for the residual exception to the hearsay rule is GRANTED. Such material shall be provided to Defendant Adams **not later than 30 days prior to trial or such other date as the trial judge directs.**

17.    **Request for Hearing Pursuant to Fed.R.Evid. 404(B) and 609**

Defendant Frederick Nolley requests a hearing pursuant to Federal Rules of Evidence 404(b) and 609, on the basis of which the court should prohibit the Government from using Nolley's prior convictions "or proof of the prior commission of other crimes, wrongs, or acts to impeach the defendant."  Terranova Affirmation ¶¶ 4-6. As the court noted in addressing Defendant Adams's motion for severance, Discussion, supra, at 46-47, the Government contends it will use the criminal history of Defendants, including Nolley, "to the extent permitted by Rule 609 of the Federal Rules of Evidence, to impeach each defendant should he or she testify at trial."  Government's Response at 23.  Further, the Government represents it will introduce "evidence of defendant's prior involvement in the distribution of controlled substances, including his/her prior conviction, as evidenced pursuant to Rule 404(b)."  Id.  The Government also states it will notify Defendants of its intention to use such evidence at trial in its pretrial memorandum that it expects to file with the trial judge in accordance with the trial judge's pretrial order.  Id.

Fed.R.Evid. 404(b) ("Rule 404(b)") prohibits the admission of evidence of defendant's other crimes or wrongs as proof of defendant's character, however, such evidence may be admitted for another purpose, such as to show motive or opportunity. Rule 404(b).  Because the Government represents that it will notify Defendants of its intention to introduce Rule 404(b) evidence at trial, and of the particular evidence it may introduce at trial when it files its pretrial memorandum with the District Judge, and that it will only introduce Rule 404(b) for a permissible purpose listed in Rule 404(b) or Rule

609 evidence to impeach a Defendant, determination of the admissibility of such prior wrongs or convictions under Rule 404(b) and Rule 609 is unnecessary at this time. Further, the court finds a pretrial hearing is unnecessary to determine the admissibility of Rule 404(b) evidence as Rule 403 requires the court to balance the probative value of evidence offered to be admitted under Rule 404(b) with the danger of unfair prejudice to the defendant.  *Figueroa,* 618 F.2d at 944.  As such, Nolley's motion for a pretrial hearing pursuant to Rules 404(b) and 609 is DENIED; Defendant's motion to preclude such evidence pursuant to Fed.R.Evid. 404(b) and 609 is DISMISSED without prejudice to renewal before Judge Arcara at trial.

## 19.   Request for Reciprocal Discovery

The Government moves for reciprocal discovery pursuant to Fed.R.Crim.P. 16(b) and advance notice of any statements Defendants propose to utilize at trial pursuant to the residual exception to the hearsay rule under Fed.R.Evid. 807. [19]  Defendants have not opposed this request.  Accordingly, the motion is GRANTED.  Defendants shall provide such discovery, if any, **not later than 30 days prior to trial or such other date as the District Judge may direct.**

---

[19] In the Government's Response, the Government requests advance disclosure of any statements Defendants intend to utilize at trial under Fed.R.Evid. 803 (24) and 804(b)(5).  Both Rule 803 (24) and 804 (b)(5) have been transferred to Rule 807, the residual exception to the hearsay rule.

**CONCLUSION**

Defendants motions are DENIED in part, GRANTED in part, and DISMISSED as moot in part.  The Government's motion for reciprocal discovery is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 24, 2006
                   Buffalo, New York